1  Frank G. Burt
   fgb@jordenusa.com
2  (*Pro hac Vice* Application Pending)
   W. Glenn Merten
3  wgm@jordenusa.com
   (*Pro hac Vice* Application to be filed)
4  JORDEN BURT LLP
   1025 Thomas Jefferson St., NW
5  Suite 400 East
   Washington, DC 20007
6  Telephone: (202) 965-8100
   Facsimile: (202) 965-8104
7

8  Mark Neubauer (SBN 73728)
   mneubauer@steptoe.com
9  STEPTOE & JOHNSON LLP
   2121 Avenue of the Stars, Suite 2800
10 Los Angeles, California 90067-5052
   Telephone: (310) 734-3200
11 Facsimile: (310) 734-3300

12
   Attorneys for Defendants
13 ASSURANT, INC. and AMERICAN SECURITY
   INSURANCE COMPANY
14
            UNITED STATES DISTRICT COURT
15
         CENTRAL DISTRICT OF CALIFORNIA
16

17 GERALDINE DOYLE and KUDA              Case No. **CV13- 5951** SJO (JEMx)
18 MUJEYI, individually and on behalf of
   all others similarly situated,         **NOTICE OF REMOVAL OF CIVIL**
19                                        **ACTION TO FEDERAL COURT**

20            Plaintiffs,

21      vs.

22
   ONEWEST BANK, FSB, INDYMAC
23 BANK, FSB, FINANCIAL FREEDOM
24 SENIOR FUNDING CORPORATION,
   LLC, QBE INSURANCE GROUP,
25 ASSURANT, INC., and AMERICAN
26 SECURITY INSURANCE
   COMPANY, and DOES 1-100,
27

28            Defendants.

FILED
CLERK, U.S. DISTRICT COURT

AUG 1 4 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1    **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441,
2    1446, and 1453 Defendants Assurant, Inc. ("Assurant"), and American Security
3    Insurance Company ("ASIC"), by and through their undersigned counsel, hereby
4    remove the above-captioned action from the Superior Court of the State of
5    California, County of Los Angeles, to the United States District Court for the
6    Central District of California, Western Division.  In support thereof, Defendants
7    respectfully state as follows:

8         1.    Plaintiffs Geraldine Doyle and Kuda Mujeyi commenced a civil
9    action against Defendants in the Superior Court of the State of California, County
10   of Los Angeles, assigned to Superior Court Judge Lee Smalley Edmon, captioned
11   *Geraldine Doyle, et al. v. OneWest Bank, FSB, et al.*, Case No. BC513292 ("the
12   Action").  As set forth below, this case is properly removed to this Court pursuant
13   to 28 U.S.C. § 1441 because Defendants have satisfied the procedural
14   requirements for removal and this Court has subject matter jurisdiction pursuant to
15   28 U.S.C. § 1332.

16   **I.    All Procedural Requirements For Removal Have Been Satisfied**

17        2.    Assurant was personally served with the Complaint on July 16, 2013.
18   ASIC has not yet been served with the Complaint.  Pursuant to 28 U.S.C. §
19   1446(b), this Notice of Removal is timely because it has been filed within thirty
20   (30) days after service on Assurant, which is the initial pleading in the Action.
21   *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999)
22   (notice of removal is timely under 28 U.S.C. § 1446(b) if filed within 30 days
23   after service of the complaint).

24        3.    The Superior Court of the State of California, County of Los
25   Angeles, is located within the Central District of California.  Venue is thus proper,
26   pursuant to 28 U.S.C. § 1441(a), because this is the district and division
27   "embracing the place where such action is pending." 28 U.S.C. § 1441(a).

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Doc. # DC-264370 v.3

1        4.    No previous application has been made for the relief requested
2    herein.

3        5.    Pursuant to 28 U.S.C. § 1446(a), complete copies of the Summons
4    and Complaint, Notice of Case Assignment and Form Voluntary Efficient
5    Litigation Stipulations are attached hereto as Exhibit 1, which are copies of all
6    process, pleadings and orders served upon Assurant.  Pursuant to 28 U.S.C. §
7    1446(d), a copy of this Notice of Removal is being served upon counsel for
8    Plaintiffs and a copy is being filed with the clerk of the Superior Court of the State
9    of California, County of Los Angeles.

10       6.    Because this case is removed pursuant to the Class Action Fairness
11   Act ("CAFA"), there is no requirement that all defendants be in unanimity
12   concerning removal.  28 U.S.C. § 1453(b) ("A class action may be removed to a
13   district court of the United States in accordance with section 1446 . . . except that
14   such action may be removed by any defendant without the consent of all
15   defendants.").

16   **II.**    **Jurisdiction of the Court**

17       As set forth further below, this case is subject to removal under CAFA, as it
18   is a putative class action in which (1) at least one member of the putative class
19   members has a different citizenship from at least one defendant, (2) the claims of
20   the putative class members, in the aggregate, exceed the sum or value of $5
21   million, and (3) there are at least 100 putative class members.  This Court,
22   therefore, has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

23       **A.**    **This Is a Putative Class Action.**

24       7.    Plaintiffs have asserted claims for breach of contract (including
25   breach of the implied covenant of good faith and fair dealing), unjust enrichment,
26   breach of fiduciary duty, financial elder abuse under California Welfare and
27   Institutions Code § 15657.5 *et seq.*, violation of the California Business &
28   Professions Code § 17200, *et seq.*, tortious interference with a business

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Doc. # DC-264370 v.3

1   relationship, and equitable relief on behalf of a putative nationwide class defined
2   as follows:

> All individuals who were, at any time during the period within four
> years of the date this action was filed (the "Class Period"), charged for
> a force-placed insurance policy placed on their property by the
> OneWest Defendants through QBE, Assurant, and/or Assurant's
> subsidiary, American Security, and/or these companies' affiliates,
> entities, or subsidiaries.

8   Compl. ¶ 86. Accordingly, this is a "class action" as defined in 28 U.S.C. §
9   1332(d)(1)(B).

10      **B.    Diversity of Citizenship.**

11      8.      As admitted in the Complaint, plaintiff Geraldine Doyle is, and was
12  at the time of the filing of the Complaint, a resident of Los Angeles County,
13  California.  Compl. ¶ 31; Plaintiff Kuda Mujeyi is, and was at the time of the
14  filing of the Complaint, a resident of New York and at all relevant times owns
15  property in Phoenix, Arizona that is the subject of this action. *Id.* at ¶ 32.

16      9.      Plaintiffs seek to represent a putative nationwide class that is
17  "certainly more than a thousand" persons. *Id.* at ¶ 89.

18      10.     Assurant is, and was at the time of the filing of the Complaint, a
19  corporation organized and existing under the laws of the State of Delaware with
20  its principal place of business in New York, New York. *Id.* at ¶ 37; Declaration of
21  Beech Turner ("Turner Dec."), attached hereto as Exhibit 2, ¶ 5.  For diversity
22  purposes, Assurant is deemed a citizen of both Delaware and New York.  28
23  U.S.C. § 1332(c)(1).

24      11.     ASIC is, and was at the time of the filing of the Complaint, a
25  corporation organized and existing under the laws of the State of Delaware with
26  its principal place of business in Atlanta, Georgia.  Compl. ¶ 38; Turner Dec. ¶ 5.
27  For diversity purposes, ASIC is deemed a citizen of both Delaware and Georgia.
28  28 U.S.C. § 1332(c)(1).

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Doc. # DC-264370 v.3

16.    Based on the foregoing, at least one proposed class member is diverse from at least one of the Defendants, and the minimal diversity necessary for removal of this action exists.  28 U.S.C. § 1332(d)(2)(A).

**C.    The Amount in Controversy Exceeds Five Million Dollars in the Aggregate.**

17.    The amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met because this action presents a dispute in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the amount in controversy in a putative class action is determined by aggregating the amount at issue in the claims of all members of the putative class. 28 U.S.C. § 1332(d)(6).  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").    While ASIC and Assurant deny plaintiffs or any putative class member is entitled to recover any amount, and specifically deny plaintiffs or any putative class member is entitled to the relief sought in any form, given the allegation of a nationwide class and the relief sought, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18.    Plaintiffs assert causes of action for breach of contract (including breach of the implied covenant of good faith and fair dealing), unjust enrichment, breach of fiduciary duty, financial elder abuse under California Welfare and Institutions Code § 15657.5 *et seq.*, violation of the California Business & Professions Code § 17200, *et seq.*, tortious interference with a business relationship, and equitable relief, and seek damages, declaratory relief, injunctive relief, treble damages and penalties under Cal. Civ. Code § 3345, restitution, and other relief deemed appropriate, including attorney fees.  Compl. ¶¶ 103, 107, 121, 131, 135, 142, 144-46.    In their prayer for relief, plaintiffs also seek exemplary damages. *Id.* at Prayer for Relief.

19.     Plaintiffs allege that defendants "purchas[e] unconscionably high-priced insurance policies, . . . without seeking competitive bids on the open market" when a homeowner's insurance policy lapses. *Id.* at ¶¶ 3-4.  In addition, plaintiffs allege that the "mortgage servicers are paid commissions or kickbacks from the force-placed insurance companies" that are "directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy." *Id.* at ¶ 22.  Finally, plaintiffs allege that "[t]his arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy that it can." *Id.* at ¶ 23.   According to the Complaint, "[d]efendants subjected Plaintiffs and the Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner." *Id.* at ¶ 88.

20.     According to the Complaint, "Assurant – collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone." *Id.* at ¶ 20. Plaintiffs' allegations include only premiums collected in 2010, a small portion of the class period asserted in the Complaint.

21.     ASIC's relationship with OneWest began in October 2010.  From October 2010 through June 2013, ASIC underwrote 79,840 lender-placed insurance policies that were placed on real property by OneWest.  Turner Dec. ¶ 7.  ASIC collected $184,154,325 in net written premiums in connection with those lender-placed insurance policies. *Id.* at ¶ 8.

22.     Plaintiff Kuda Mujeyi alleges that IndyMac "force-placed" hazard insurance on his property through ASIC.  Compl. ¶ 77.  Accordingly, only lender-placed *hazard* insurance is at issue with regard to Assurant and ASIC.  From October 2010 through June 2013, ASIC underwrote 65,136 lender-placed hazard insurance policies that were placed on real property by OneWest.  Turner Dec. ¶ 7.  ASIC collected $161,892,016 in net written premiums in connection with those lender-placed hazard insurance policies. *Id.* at ¶ 8.

6

23.    Plaintiffs allege that the "premiums on force-placed insurance policies generally cost at least five to six times, and often up to ten times, more than what the borrower was either paying originally for homeowner's insurance or what the borrower could obtain on the open market." Compl. ¶ 19.  In particular, Mr. Mujeyi alleges that the annual premium for his homeowners insurance policy obtained through American Family Insurance was $975.00  *Id.* at ¶ 77.  He also alleges that the annual premium for the force-placed policies with ASIC were between $4,075.00 and $4,136.00.  *Id.* at ¶¶ 78, 80.    According to those allegations, Mr. Mujeyi's lender-placed insurance policy cost approximately four times more than his homeowner's insurance policy. Based on plaintiffs' calculations, they allege that the putative class was overcharged for all lender-placed insurance in an aggregate amount of anywhere from $138,115,744 to $165,738,893 and for lender-placed hazard insurance in an aggregate amount of anywhere from $121,419,012 to $145,702,815.

24.    The policies and premium amount totals set forth in paragraphs 21 through 23 include only coverage issued by ASIC.  Plaintiffs' allegations also pertain to coverage issued by QBE, *see* Compl. ¶ 86, which would significantly increase the amount in controversy.

25.    Plaintiffs also seek restitution, exemplary damages and attorneys' fees, all of which count toward the CAFA jurisdictional threshold.  Compl. ¶¶ 103, 107, 131, 135, 142, 145, Prayer for Relief; *see, e.g., Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) ("attorneys fees [are] properly included in the amount in controversy in a class action"); *Yeroushalmi v. Blockbuster, Inc.*, No. CV 05-225, 2005 WL 2083008, at *5 (C.D. Cal. July 11, 2005) ("it is proper to consider the cost of injunctive relief, potential punitive damages, and attorney's fees" in determination of the amount in controversy under CAFA).  On average, attorneys' fees are "25% of the recovery obtained" for plaintiffs, which in this case would amount to anywhere from $34,528,936 to

7

1    $41,434,723 based on the alleged excess amounts ASIC charged for lender-placed

2    insurance alone.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

3    2002) (internal citation and quotations omitted).  Once again, these calculations do

4    not include "25% of the recovery obtained" in connection with coverage issued by

5    QBE.  In addition, the Complaint seeks injunctive and declaratory relief against

6    Defendants concerning the pricing of lender-placed policies, the cost of which

7    injunctive or declaratory relief, if ordered, would exceed the jurisdictional

8    threshold amount due to increased administrative costs, re-structuring of products,

9    and other negative impacts on ASIC's business.  Compl. ¶¶ 103, 107, 144, 146,

10   Prayer for Relief; Turner Dec. ¶ 9.  "In calculating the value of an injunction, the

11   amount in controversy is satisfied if either party can gain or lose the jurisdictional

12   amount."  *Mora v. Harley-Davidson Credit Corp.*, No. 1:08–cv–01453, 2009 WL

13   464465, at *5 (E.D. Cal. Feb. 24, 2009).

14          26.    Based on the foregoing, the sum or the value of the alleged claims of

15   the putative class members in the aggregate far exceeds $5 million.

16          **D.    The Proposed Class Consists of More Than 100 Members.**

17          27.    Plaintiffs assert claims on behalf of a nationwide putative class

18   comprising "[a]ll individuals who were, at any time during the period within four

19   years of the date this action was filed (the "Class Period"), charged for a force-

20   placed insurance policy placed on their property by the OneWest Defendants

21   through QBE, Assurant, and/or Assurant's subsidiary, American Security, and/or

22   these companies' affiliates, entities, or subsidiaries."  Compl. ¶ 86.  While ASIC

23   and Assurant deny plaintiffs or any putative class member is entitled to relief

24   related to any type of lender-placed insurance other than lender-placed *hazard*

25   insurance, given the allegation of a nationwide class that was charged for "force-

26   placed insurance" generally, the proposed class greatly exceeds 100 class

27   members.  28 U.S.C. § 1332(d).

28

8

Doc. # DC-264370 v.3

1    28.    The Complaint alleges that "[t]he precise number of Class members
2  is certainly more than a thousand." Compl. ¶ 89.

3    29.    From October 2010 through June 2013, ASIC issued 79,840 lender-
4  placed insurance policies placed on real property by OneWest, 65,136 of which
5  were lender-placed hazard insurance policies. Turner Dec. ¶ 7. QBE also issued
6  an undetermined number of policies.

7    30.    The proposed class greatly exceeds 100 class members. 28 U.S.C. ¶
8  1332(d).

9  **III.    No Exceptions to CAFA's Jurisdiction Apply**

10    **A.    The Local Controversy Exception Does Not Apply.**

11    Plaintiff bears the burden of demonstrating the existence of express
12  statutory exceptions contained in CAFA to the Court's jurisdiction. *Madden v.*
13  *Cowen & Co.*, 576 F.3d 957, 974 (9th Cir. 2009). Here, no exceptions apply.

14    31.    The local controversy exception, 28 U.S.C. § 1332(d)(4)(A),
15  requires, *inter alia*, that "greater than two-thirds of the members of all proposed
16  plaintiff classes in the aggregate are citizens of the State in which the action was
17  originally filed[.]" 28 U.S.C. § 1332(d)(4)(A)(i)(I). From October 2010 through
18  June 2013, ASIC underwrote 79,840 lender-placed insurance policies that were
19  placed on real property by OneWest. Turner Dec. ¶ 7. Of those policies, 14,106
20  (less than 18%) were issued on properties in California. *Id.*

21    32.    The local controversy exception also requires that "during the 3-year
22  period preceding the filing of [the] class action, no other class action has been
23  filed asserting the same or similar factual allegations against any of the defendants
24  on behalf of the same or other persons[.]" 28 U.S.C. § 1332(d)(4)(A)(ii).
25  Assurant and ASIC are defendants in other class actions involving lender-placed
26  insurance placed by servicers other than OneWest or IndyMac asserting virtually
27  identical allegations. *See, e.g., Simpkins v. Wells Fargo Bank, N.A.*, No. 3:12-cv-
28  00768-DRH-PMF (S.D. Ill.); *In Re JPMorgan Chase LPI Hazard Litigation*, No.

Doc. # DC-264370 v.3

1  3:11-cv-03058-JCS (N.D. Cal.); *Montanez v. HSBC Mortgage Corp. (USA)*, No.
2  2:11-cv-04074-JD (E.D. Pa.).  However, ASIC and Assurant are not aware of any
3  putative class action challenging lender-placed insurance relating to borrowers
4  serviced by OneWest or IndyMac.

  **B. The Home State Exception Does Not Apply.**

6    33. Like the local controversy exception, the home state exception
7  requires that "two-thirds or more of the members of all proposed plaintiff classes
8  in the aggregate . . . [be] citizens of the State in which the action was originally
9  filed." 28 U.S.C. § 1332(d)(4)(B).  As set forth above, less than 18% of the
10 putative class members in this action, including the plaintiffs, reside in California.
11 Turner Dec. ¶ 7.

  **C. The Interests Of Justice Exception Does Not Apply.**

13   34. Under the interests of justice exception, the Court may decline to
14 exercise jurisdiction over certain class actions in which, *inter alia*, "greater than
15 one-third but less than two-thirds of the members of all proposed plaintiff classes
16 in the aggregate and the primary defendants are citizens of the State in which the
17 action was originally filed[.]"  28 U.S.C. § 1332(d)(3).  Far fewer than one-third
18 of the putative class members – less than 18% – are citizens of the State of
19 California. Turner Dec. ¶ 7. Moreover, neither Assurant nor ASIC are citizens of
20 California.  Compl. ¶¶ 37, 38; Turner Dec. ¶ 5.[1]

---

[1] Even if plaintiffs satisfied the prerequisites for application of the interests of justice exception, consideration of the factors set forth in 28 U.S.C. § 1332(d)(3)(A-F) shows that the exception should not apply and the Court should exercise its discretion to retain jurisdiction of this action.

1     **WHEREFORE**, based upon the foregoing, Defendants Assurant, Inc., and

2    American Security Insurance Company respectfully give notice that the above-

3    captioned case is hereby removed to the United States District Court for the

4    Central District of California, Western Division, pursuant to 28 U.S.C. §§ 1332,

5    1441, 1446 and 1453, and further proceedings in this action should be

6    discontinued in the Superior Court of the State of California, County of Los

7    Angeles.

8

9    Dated:  August 14, 2013             STEPTOE & JOHNSON LLP

10                            MARK NEUBAUER

11

12                            By: _____

13                               MARK NEUBAUER

14                          Attorneys for Defendants
ASSURANT, INC. and AMERICAN
SECURITY INSURANCE COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Doc. # DC-264370 v.3

**EXHIBIT 1**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ONEWEST BANK, FSB (SEE ADDITIONAL PARTIES )

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* GERALDINE DOYLE
and KUDA MUJEYI, on behalf of themselves and all others similarly
situated   *individually and*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 24 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court - Central District<br>111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>**BC513292** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric Brown, Esq. , 680 S. Santa Fe Ave, Los Angeles, CA 90021, Phone: 310-575-9955

| DATE:<br>*(Fecha)* | John A. Clarke | Clerk, by<br>*(Secretario)* | Amber Hayes | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

JUN 24 2013

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 1

12

SUM-200(A)

| SHORT TITLE: DOYLE, et al. vs. ONEWEST BANK FSB, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

INDYMAC BANK, FSB,
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, LLC,
QBE INSURANCE GROUP,
ASSURANT, INC.,
and AMERICAN SECURITY INSURANCE COMPANY

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

13

1
2
3
4
5

Catherine E. Anderson (Pro Hac Pending)
Oren Giskan (Pro Hac Pending)
GISKAN SOLOTAROFF
ANDERSON & STEWART, LLP
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 520-3237

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 24 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

6
7
8

Michael C. Eyerly (SBN 178693)
DEBLASE BROWN EYERLY LLP
680 S. Santa Fe Avenue
Los Angeles, California 90021
Tel: (310) 575-9955
Fax: (310) 575-9919

9

Attorneys for Plaintiffs

10

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF LOS ANGELES

13

14
15

GERALDINE DOYLE and KUDA
MUJEYI, individually and on behalf of all
others similarly situated,

16

        Plaintiffs,

17

v.

18
19
20
21

ONEWEST BANK, FSB, INDYMAC
BANK, FSB, FINANCIAL FREEDOM
SENIOR FUNDING CORPORATION,
LLC, QBE INSURANCE GROUP,
ASSURANT, INC., and AMERICAN
SECURITY INSURANCE COMPANY,
and DOES 1-100,

22

        Defendants.

23

24

BY FAX

CASE NO.   BC513292

CLASS ACTION COMPLAINT FOR

1. Breach of Contract
2. Unjust Enrichment
3. Breach of Fiduciary Duty
4. Financial Elder Abuse
5. Violations of Bus. & Prof. Code
   Section 17200
6. Tortious Interference with Business
   Relationship
7. Tortious Interference with Business
   Relationship
8. Equitable Relief

25

26

27

        Plaintiffs, Geraldine Doyle and Kuda Mujeyi, on behalf of themselves and a class

of similarly situated persons who were charged for forced placed insurance by

Defendants in connection with their home mortgages, bring this action against

28

-1-

CLASS ACTION COMPLAINT

1   Defendants OneWest Bank, FSB ("OneWest"), IndyMac Bank, FSB. ("IndyMac"),

2   Financial Freedom Senior Funding Corporation, LLC ("Financial Freedom") (collectively

3   the "OneWest Defendants"), QBE Insurance Group ("QBE"), Assurant, Inc. ("Assurant"),

4   and American Security Insurance Company ("American Security") and allege as follows:

5                               **INTRODUCTION**

6       1.      This is a class action lawsuit filed to redress injuries that Plaintiffs and the

7   Class have suffered, and will continue to suffer, as a result of Defendants' practices

8   relating to force-placed insurance.

9       2.      Defendants have engaged in a pattern of unlawful, deceptive, unfair, and

10  unconscionable profiteering and self-dealing with respect to force-placed insurance

11  policies procured in connection with the residential mortgage loans of Plaintiffs and the

12  proposed Class.

13      3.      Defendants' unlawful actions include, *inter alia*, purchasing

14  unconscionably high-priced insurance policies, having pre-arranged agreements to

15  purchase force-placed insurance from the two predominant force-placed insurance

16  companies in the nation, Defendants QBE and Assurant and Assurant's subsidiary,

17  American Security, without seeking competitive bids on the open market in order to

18  maximize their own profits, backdating the force-placed policies to charge for retroactive

19  coverage, and giving and receiving "commissions" or "kickbacks" for the procurement of

20  the force-placed policies. These actions constitute a pattern of exploitative profiteering

21  and self-dealing against the interest of the named Plaintiffs and the other Class

22  members.

23      4.      As detailed more fully below, the unlawful scheme usually begins when a

24  homeowner's insurance policy has lapsed, often because the homeowner is already

25  struggling to pay on a costly mortgage (often substantially greater than the value of the

26  home), or sometimes due to no fault of the homeowner, for example, when an

27  insurance company declines to continue insuring the home and the homeowner does

28

-2-

CLASS ACTION COMPLAINT

15

1  not receive notice of the cancellation or a clerical error at the insurance company

2  mistakenly shows that a policy has expired.

3      5.    Once an insurance policy has lapsed, the mortgage servicer can purchase

4  insurance for the home, "force-place" it, and then charge the borrower the full cost of the

5  premium.

6      6.    Instead of seeking either to maintain the borrower's delinquent existing

7  policy or obtain bids for the force-placed insurance on the open market, the mortgage

8  servicers have entered into exclusive relationships with certain force-placed insurance

9  providers and continually purchase the force-placed insurance policies from these same

10 providers.

11     7.    Accordingly, no arms-length transactions are taking place. Indeed, the

12 mortgage servicers and the force-placed insurance providers can often be found

13 working out of the same offices.

14     8.    Moreover, when borrowers have had just temporary lapses in their policy,

15 the mortgage service providers have retroactively "placed" the force-placed insurance

16 policy on the property for that period of time.  In these situations, the borrowers are

17 charged an unreasonable premium for the retroactive force-placed insurance, despite

18 the fact that the time has lapsed, the homeowner often has since secured his or her

19 own standard insurance, and no claims were made during the lapsed period.

20     9.    This retroactively force-placed insurance is especially egregious given the

21 fact that the National Association of Insurance Commissioners has already stated that

22 insurance is "prospective in nature" and that policies should not be backdated.

23     10.   Homeowners' mortgage payments often include an amount to be placed in

24 escrow so that the mortgage servicers can pay the insurance when it is due.  However,

25 mortgage servicers, in instances where a homeowner has missed mortgage payments,

26 have often stopped forwarding the homeowner's insurance payments to the insurance

27

28

-3-

**CLASS ACTION COMPLAINT**

16

1  company and then purchased force-placed insurance for the lapsed policy.  This occurs
2  even when the borrower has paid enough into escrow to cover the insurance payments.
3      11.    Furthermore, these fraudulent practices have recently come under fire by
4  all fifty State Attorneys General.  Pursuant to their nation-wide investigation into lenders
5  and mortgage servicers related to the housing and foreclosure crisis, they have recently
6  proposed Settlement Terms, several of which involve force-placed insurance.
7      12.    The proposed settlement terms include, among other things, the following
8  proposed restrictions: (1) mortgage servicers are prohibited from force-placing
9  insurance when the servicer knows, or has reason to know, that the borrower has a
10  policy in effect that meets the minimum requirement of the loan documents; (2)
11  mortgage servicers cannot force-place insurance that is in excess of the replacement
12  cost of the improvements on the mortgaged property; (3) mortgage servicers are
13  prohibited from purchasing the force-placed insurance from a subsidiary, affiliate, or any
14  entity in which they have an ownership interest; (4) mortgage servicers are prohibited
15  from splitting fees, giving or accepting kickbacks or referral fees, or accepting anything
16  of value in relation to the purchase or placement of the force-placed insurance; (5)
17  mortgage servicers have to make reasonable efforts to continue or reestablish the
18  borrower's existing insurance policy if there is a lapse in payment; and (6) the mortgage
19  servicer is required to purchase the force-placed insurance for a commercially
20  reasonable price.
21      13.    As the State Attorneys General have recognized, the practice of force
22  placing insurance on homeowners has contributed to and exacerbated the foreclosure
23  crisis.  When the excessively priced insurance is force-placed on homeowners, already
24  struggling to keep up with their mortgage payments, it often pushes those homeowners
25  into foreclosure.  The force-placed insurance premium is placed right into the borrower's
26  mortgage payment, raising the amount of that payment to far more than what the
27  borrower is able to pay.
28

-4-

CLASS ACTION COMPLAINT

17

14.   Force-placed insurance policies are generally meant to protect a mortgagee's interest in the borrower's property when the borrower's insurance policy has lapsed. Defendants, however, have turned them into a severely inflated profit-making machine for themselves at the expense of the homeowner.

15.   Mortgage Servicers – like IndyMac and Financial Freedom here – are companies that contract with the owners/investors of residential mortgage loans to administer those loans on behalf of the owners/investors. They are responsible for the day-to-day management of the mortgage loan account, including collecting and crediting the monthly loan payments, handling the escrow account, and otherwise handling customer service and management of the mortgage loans within their servicing portfolio.

16.   Mortgage servicers do not actually own the mortgages that they service. Instead, they simply contract with the owners/investors of the mortgage loans to manage the loans in their portfolio on the owners/investors behalf and receive various fees in return. These fees are paid by the owners/investors who own the beneficial interest in those loans.

17.   Because they do not own the loans that they service, mortgage servicers do not incur a financial loss if a borrower fails to pay the mortgage, or if the loan goes into foreclosure.

18.   Surplus-line insurance providers – like QBE here – are not subject to the regulations of the states they provide the surplus line insurance to, often in the form of force-placed insurance, as is the case here.

19.   The premiums on force-placed insurance policies generally cost at least five to six times, and often up to ten times, more than what the borrower was either paying originally for homeowner's insurance or what the borrower could obtain on the open market.

20.    The force-placed insurance policies are extremely lucrative for the insurance providers and generate profit margins unheard of elsewhere in the insurance industry. Indeed, one leading insurance provider – Assurant – collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone.

21.    The force-placed insurance policies are not just lucrative for the insurance providers. The mortgage servicers also reap significant profits when a struggling homeowner's insurance policy lapses.

22.    The mortgage servicers are paid commissions or kickbacks from the force-placed insurance companies once one of the high-priced, force-placed, insurance policies is purchased. These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy.

23.    This arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy that it can because the higher the cost of the insurance policy, the higher the commission or kickback to the mortgage servicer.

24.    The full price of the force-placed insurance policy (without accounting for the kickback that is paid back to the servicer) is placed upon the borrower by the mortgage servicer and can often force an already struggling homeowner into foreclosure.

25.    In some instances, premiums for force-placed insurance have been placed on borrowers that are in excess of their mortgage's face value and the property's overall worth.

26.    Mortgage servicers consistently choose force-placed insurance arrangements that reward themselves at the expense of the borrowers. The National Association of Insurance Commissioners stated that mortgage servicers "have no incentive to select a competitively priced product" but instead would select one "where they are provided with an incentive or inducement to enter into the transaction."

-6-
CLASS ACTION COMPLAINT

19

27.    Borrowers are at the complete mercy of the mortgage servicers and their arrangements with the insurance providers.  Borrowers can select a lender or mortgage broker for their loan but cannot select what company services that loan.  Indeed, mortgage loans are often sold shortly after origination and change hands many times as they are sold in the market.

28.    Moreover, this scheme does not injure the borrower alone.  As explained above, the unreasonable cost of the force-placed insurance can often push a homeowner into foreclosure.  This proves to be extremely lucrative for the mortgage servicer and usually a considerable loss for the ultimate owner of the mortgage – investors in mortgage-backed securities.

29.    The proceeds of a house sold at a foreclosure auction will go to the mortgage holder, i.e., the investors.  However the mortgage holders only receive whatever money is left after expenses, which includes the cost of force-placed insurance.  Therefore, it is in the interest of a mortgage servicer to place a high-cost force-placed policy on a struggling borrower, which comes at the expense  of not only the borrower but the mortgage holders/investors.  The mortgage servicer will collect a huge profit (much more than the $50 it was making in servicing the loan), while the borrowers and investors are the ultimate losers.

30.    This scheme of exclusive relationships, back-room deals, and kickbacks appears to be wide-spread in the industry. *See Abels v. JPMorgan Chase*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) (denying motion to dismiss class action complaint against mortgage service provider JP Morgan Chase for kickbacks received and the excessive cost of force-placed insurance); *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636 (5th Cir. 2000) (upholding class certification where plaintiffs alleged excessive insurance coverage and unlawful kickbacks related to force-placed insurance); *Hall v. Midland Group*, No. CIV.A 99-3108, 2000 WL 1725238 (E.D. Pa., November 20, 2000)

-7-

CLASS ACTION COMPLAINT

1 (certifying a settlement class of plaintiffs who alleged that the force-placed insurance
2 was excessive and unauthorized and that the mortgage servicer was receiving improper
3 commissions.)

4                                          **PARTIES**

5        31.    **Plaintiff Geraldine Doyle** is, and at all relevant times has been, a
6 resident of Los Angeles County, California.

7        32.    **Plaintiff Kuda Mujeyi** is, and at all relevant times have been, a
8 resident of New York and a homeowner of a property in Phoenix, Arizona that is the
9 subject of this action.

10       33.    **Defendant IndyMac Bank FSB ("IndyMac")**, a federally chartered
11 savings bank, is a corporation organized under the laws of the State of Delaware.
12 IndyMac was or is, on information and belief, owned by IndyMac Bancorp Inc, a holding
13 company headquartered in Pasadena, California.  In July 2008, IndyMac was seized by
14 the United States Federal Deposit Insurance Corporation ("FDIC").  On or about March
15 19, 2009, OneWest Bank, FSB acquired certain assets of IndyMac from the FDIC,
16 including the reverse mortgage servicing portfolio of Financial Freedom Senior Funding
17 Corporation, IndyMac's reverse mortgage servicing subsidiary.  IndyMac Mortgage
18 Services is a division of OneWest Bank.

19       34.    **Defendant OneWest Bank, FSB ("OneWest")**, is a federally chartered
20 banking company, owned by OneWest Bank Group LLC, a Delaware corporation, with
21 offices located at 888 East Walnut Street, Pasadena, CA 91101.

22       35.    **Defendant Financial Freedom Senior Funding Corporation ("Financial
23 Freedom")** is a Delaware corporation and an operating subsidiary of IndyMac Bank, with
24 its principal place of business at 7595 Irvine Venter Drive, Suite 250, Irvine, CA 92618.

25       36.    **Defendant QBE** is an Australian corporation.  QBE Americas, Inc., QBE's
26 American subsidiary is a Delaware corporation with its principal place of business in
27 New York.  QBE Americas, Inc. is authorized to conduct business in the State of
28

California. QBE and its subsidiaries are referred to collectively herein as "QBE." In or around June 2011, Defendant QBE purchased Balboa Insurance Company, the entity issuing the force-placed insurance policy which was placed on, and charged to the mortgage of, Plaintiff Doyle.

37.    **Defendant Assurant Inc.** is a Delaware corporation with its principal offices in New York, New York. Assurant participates in the force-placed insurance market through its trade name, Assurant Specialty Property, and its business strategy "is to pursue long term growth in lender placed homeowner's insurance." Assurant Form 10-K for the fiscal year ending December 31, 2011 at 5. "The largest product line within Assurant Specialty Property is homeowners insurance consisting principally of fire and dwelling hazard insurance offered through (Assurant Specialty Property's) lender placed program." *Id.*

38.    **Defendant American Security Insurance Company** ("American Security") is a Delaware corporation with its principal place of business in Atlanta, Georgia. American Security is a wholly owned subsidiary of Interfinancial, Inc., which, in turn, is a wholly owned subsidiary of Defendant Assurant. American Security does business throughout the United States. Upon information and belief, American Security provides services to the OneWest Defendants in relation to force-placed insurance practices, including: (1) tracking borrower's loans to determine the existence of hazard insurance; and (2) placing force-placed insurance for the OneWest Defendants when there has been a lapse. American Security often operates under the trade name Assurant Specialty Property. Upon information and belief, American Security passes much of its profits from force-placed insurance to its corporate parent, Assurant. Plaintiff Mujeyi's force-placed insurance policy was issued by American Security.

39.    The true names and capacities, whether individuals, corporate, or otherwise of Defendants, sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names

-9-
**CLASS ACTION COMPLAINT**

22

1  and capacities.  Plaintiffs will seek leave to amend this Complaint to include said

2  Defendants' true names when they have been ascertained.  Plaintiffs are informed and

3  believe, and upon such information and belief hereby allege, that each of the

4  Defendants sued herein as a DOE Defendant is liable or responsible for the events and

5  happenings alleged in this Complaint and by their conduct directly and proximately

6  caused Plaintiffs and the Class to sustain the injuries and damages alleged herein.

7       40.   The term "Defendants," as used herein, shall include the Defendant DOES

8  1 through 100, inclusive.

9  **JURISDICTION AND VENUE**

10       41.   This Court has jurisdiction over these claims.  The individual and

11  representative Plaintiffs bring this action as a class action on behalf of themselves and

12  all others similarly situated pursuant to California Code of Civil Procedure §382.

13       42.   This Court has jurisdiction over Defendants pursuant to California Code of

14  Civil Procedure §410.10 because Defendants conduct business and have extensive

15  contacts throughout California, including Los Angeles County.

16       43.   Defendants, and each of them, have sufficient minimum contacts with

17  California or otherwise intentionally avail themselves of the California market through

18  regularly conducting business, marketing and selling its services and/or products in

19  California so as to render the exercise of jurisdiction over Defendants, and each of

20  them, by the California courts consistent with notions of fair play and substantial justice.

21       44.   Venue is proper in this Court under California Code of Civil Procedure

22  §§395 and 395.5 because one or more Defendants do business in Los Angeles County

23  and because the OneWest Defendants maintain their corporate headquarters in Los

24  Angeles County, State of California.  Venue is also proper in this County as all

25  Defendants conduct substantial business activity, including activities related to and

26  involving force-placed insurance in this County.

27

28

-10-
**CLASS ACTION COMPLAINT**

23

## FACTUAL ALLEGATIONS

45.     Endemic to the force-placed insurance industry are the outsized and unconscionable profits, which the mortgage lenders, mortgage servicers and force-placed insurers reap through kickbacks and other tying arrangements, all at the expense of the unsuspecting borrower.  Defendants Assurant and QBE dominate the force-placed insurance market and together are responsible for more than 99% of the force-placed policies issued nationwide during the relevant period. Mortgage lenders and services, together with the two predominant forced placed insurers, Defendants QBE and Assurant, manipulate the force-placed insurance market and artificially inflate the premiums charged to consumers, resulting in premiums several times greater than those available to the consumer in the open market. *American Banker* reported that "[t]hough part of the extra expense can be explained by the higher risks associated with insuring the homes of delinquent borrowers, force-placed policies generate profit margins unheard of elsewhere in the insurance industry—even after accounting for the generous commissions and other payments that servicers demand." *See* J. Horowitz, *Ties to Insurers Could Land Mortgage Servicers in More Trouble*, AM. BANKER (Nov. 10, 2010), *available at* http://www.americanbanker.com/issues/175_216/ties-to-insurersservicers-in-trouble-1028474-1.html.

46.     When a mortgage servicer force places an insurance policy on a borrower, a percentage of the premium of the force-placed insurance policy – the entirety of which is usually charged to borrower's mortgage account – is paid back to the mortgage servicer or a related entity in the form of "kickbacks" and/or unearned "commissions," even though there is no work performed by the mortgage servicer in connection with the individual insurance placement.  When a mortgage servicer notifies a borrower that a force-placed insurance policy has been secured and retroactively placed on the borrower's property, the mortgage servicer routinely fails to  disclose the profits or financial windfalls it has derived as a result, and at the borrower's expense.

47.     Regulators have begun to take notice.  Indeed, after pressure from the California Insurance Commissioner, Defendant American Security announced that it will be slashing its force-placed insurance rates by approximately 30%.  Dave Jones, the California Insurance Commissioner released a statement saying, "[m]y directive for insurers to submit new rate filings, and subsequent review of those filings, confirmed that rates *were indeed excessive and needed to be lowered*" (emphasis added). *See* Bibeka Shrestha, *Assurant to Drastically Cut Force-Placed Rates in Calif.* available at http://www.law360.com/articles/388842/print?section=privacy

48.     Defendants here have improperly engaged in self-dealing at the expense of Plaintiffs and the Class, in a manner not disclosed by the mortgage nor within the reasonable contemplation of the parties by charging Plaintiffs and the other members of the Class the full amount of the exorbitantly-priced, force-placed insurance policies and paying and receiving a percentage of the premium to each other, thereby enabling Defendants to earn a hidden profit and financial windfall.

49.     Defendants' excessively priced insurance premiums violate the mortgage contract because they exceed the cost of the services and are not reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument.

50.     Borrowers, like Plaintiffs and the other Class Members, are typically notified by mail or in their mortgage contracts that the cost of the force-placed insurance may be higher than the amount they would typically pay for insurance obtained on the open market.

51.     These notices usually state that the insurance will cover the lender, but may or may not protect the borrower or the contents of the property, and that the insurance obtained by the lender may be more expensive than the insurance obtained by the borrower.  There are no insurance rates or premiums set forth in the mortgage contract for the cost of force-placed insurance policies.

52.     Neither the mortgage contract nor any subsequent notice discloses, however, that the mortgage servicer will receive unearned commissions and/or kickbacks from QBE, Assurant, or Assurant's subsidiary, American Security, for purchasing the forced placed insurance from them. Nor is it disclosed to the borrower that unearned commission fees and/or kickbacks simply will be based upon a percentage of the cost of the premium of the force-placed insurance. Instead, the mortgage servicer misrepresents to borrowers that the cost of the force-placed insurance may be higher due to the "risk" the borrower poses or the actual costs incurred in securing the policies.

53.     Routinely, the mortgage servicer disingenuously claims that it incurs fees or expenses in locating the force-placed insurance for the individual borrower.

54.     In fact, the so-called "expenses" the mortgage servicers incur are next to nothing. Indeed, the OneWest Defendants have pre-existing relationships with Defendants QBE, Assurant, and Assurant's subsidiary, American Security, and incur almost no costs (in time or money) in securing a force-placed insurance policy, which has been prearranged under a blanket or umbrella policy. The OneWest Defendants contract almost exclusively with Defendants QBE, Assurant, and American Security when seeking force-placed insurance.

55.     Plaintiffs and the other Class members do not have any choice or input into what company is used to force-place the insurance policy, or what expenses are incurred in "finding" an insurance company. Nor do they have the option to shop for the insurance service themselves.

56.     The force-placed insurance policies are not the same type of policy that is authorized or required by the mortgage contract and is not one that a borrower could find on the open market.

57.     Upon information and belief, the OneWest Defendants have negotiated deals with Defendants QBE, Assurant, and American Security, whereby they receive a

1    percentage of the cost of the premiums of the force-placed insurance policy purchased

2    for the borrower.  This commission or kickback structure encourages the Defendants

3    to select the most expensive insurance policy, despite not having an interest in the

4    insured collateral.

5        58.    The commission or kickback is paid by QBE, Assurant, and/or American

6    Security to the OneWest Defendants in order to induce them to purchase excessively-

7    priced, force-placed insurance policies.

8        59.    The OneWest Defendants charge Plaintiffs and the other Class members

9    the full amount of the over-priced premium for the insurance policy, despite being paid

10   the kickback percentage of the policy.  The insurance policies also often charge

11   borrowers for unnecessary insurance items.

12       60.    This scheme allows the OneWest Defendants -- through kickbacks -- and

13   QBE, Assurant, and American Security-- through excessively-priced premiums -- to reap

14   huge profits at the cost of the Plaintiffs, the other Class Members, or ultimately, the

15   mortgage investors.

16       61.    By securing these force-placed insurance policies through these exclusive

17   relationships and not seeking competitive bids on the open market or attempting to

18   continue or reestablish the prior insurance policy, the OneWest Defendants are not

19   only obtaining the highest non-competitive premium rate, but also engaging in self-

20   dealing and profiteering.

21       62.    The kickbacks and commissions that the OneWest Defendants can earn

22   on the force- placed insurance policies are far greater than what it can earn on

23   servicing a loan (approximately $50 per loan), which provides increased incentive for it

24   to continue with this deceptive and unsavory practice.

25       63.    Upon information and belief, QBE, Assurant, and/or American Security

26   have entered into agreements with the OneWest Defendants whereby they will

27

28

-14-

CLASS ACTION COMPLAINT

1  search its servicing portfolios to detect uninsured properties and will even perform
2  other back-office administrative functions.

3      64.    The actions and practices described above represent unfair, deceptive,
4  and fraudulent practices that, even if the terms of the mortgage could be construed to
5  allow, would still be an abusive and unlawful use of contractual powers.  The practice of
6  Defendants in placing these unreasonably priced insurance policies on Plaintiffs and
7  other Class members without regard for competition on the open market or a
8  commercially reasonable price, solely to maximize Defendants' own profits through the
9  exorbitant cost of the policies, and by collecting kickbacks as a percentage of the
10  premium charged to the borrower for those policies, is inherently unfair and deceptive
11  and prohibited by law.

12      **Plaintiff Geraldine Doyle**

13      65.    Doyle obtained a Home Equity Conversion Loan Agreement ("Mortgage"
14  or "HECM"), also commonly referred to as a reverse mortgage, from Financial Freedom,
15  a mortgage lender and servicer and a subsidiary of IndyMac Bank, secured by a Deed
16  of Trust for a parcel of real property in Los Angeles County, California on February 2,
17  2006.  The United States Department of Housing and Urban Development ("HUD")
18  insured the mortgage in case of lender default.  Doyle and her husband, Earl R. Doyle,
19  were over the age of 62, as required to be eligible for the Fair Housing Authority's
20  HECM.

21      66.    Doyle obtained the mortgage in order to make necessary repairs to her
22  property, such as repairs to the roof and heating system.  Through her Mortgage, Doyle
23  received a $54,824.00 line of credit to make the necessary repairs.  The principal limit of
24  her loan was $207,878.67, which was the total amount that Doyle was able to borrow at
25  the time of closing.

67.  Section 2.10.3 of Doyle's HECM provides that the Lender shall withhold premiums for fire, flood, and other hazard insurance required by the Security Instrument.  Section 3 of Doyle's Security Instrument ("Deed") provides that:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire.  This insurance shall be maintained in the amounts, to the extent and for the period required by Lender or the Secretary of . . . HUD.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable claims in favor of, and in a form acceptable to Lender.

68.  Nowhere does Doyle's HECM or Deed explicitly authorize the OneWest Defendants to force-place insurance for Doyle's home, or provide any guidance on how they could be authorized to act with respect to purchasing insurance on Doyle's behalf.

69.  In or around 2007, IndyMac froze Doyle's account.  As a result, Doyle could not make the necessary repairs on her home, as outlined and required by the Repair Rider to her Mortgage.

70.  Doyle's home had been insured through the California Fair Plan through the time of the closing on her Mortgage.  From May 4, 2005 through May 4, 2006, the annual premium for the homeowner's insurance that Doyle purchased on the market from the California Fair Plan was approximately $384.00.

71.  However, since Doyle was unable to make the necessary repairs to her roof and her property when IndyMac froze her escrow account, the California Fair Plan determined it could no longer insure her property and terminated its coverage of her home in or around 2007.  In other words, because IndyMac had failed to provide Doyle the funds owed to her from her reverse mortgage, Doyle was unable to make the necessary repairs and maintain coverage through the California Fair Plan.  Doyle promptly notified Financial Freedom as to why her insurance had lapsed.

72.  Nonetheless, on May 22, 2007, Financial Freedom notified Doyle that it would force-place insurance on Doyle's property at an annual premium of $2,754.00 for

-16-
**CLASS ACTION COMPLAINT**

1  a coverage amount of $300,000 if she did not obtain coverage within 60 days.  The

2  notice indicated that if she did not insure her home, any force-placed policy would be

3  backdated with an effective date of May 4, 2007.

4      73.    In or around May or June 2007, IndyMac also mistakenly allowed Doyle's

5  fire insurance to lapse.  Doyle immediately contacted IndyMac to inquire about the

6  status of her fire insurance.  California Fair Plan informed Doyle that they had forwarded

7  two fire insurance statements to IndyMac for payment.  IndyMac subsequently informed

8  California Fair Plan that it would make the necessary payments for the fire insurance.

9  However, Doyle received another notice dated June 19, 2007, informing Doyle that she

10  still had not acquired fire insurance and that IndyMac would force-place such insurance

11  on her home if she did not obtain coverage.  The notice also indicated that any force-

12  placed insurance would have a backdated effective date of May 4, 2007.

13      74.    Doyle received a notice dated October 6, 2008, notifying her that Financial

14  Freedom had force-placed insurance on her home through QBE (Balboa), backdating

15  Doyle's policy by more than two months, to July 20, 2008.  The annual premium for the

16  policy was $2,754.00.  This cost was added to Doyle's loan.  Financial Freedom

17  renewed her policy annually until July 2012, when Doyle obtained insurance for her

18  home through the California Fair Plan.

19      75.    In 2011, OneWest Bank notified Doyle that it would foreclose on her home

20  due to the force-placed insurance, the lack of repairs, and back taxes.  Doyle was able

21  to avoid foreclosure through the help of an attorney.

22  **Plaintiff Kuda Mujeyi**

23      76.    In 2005, Mujeyi purchased land in Phoenix, Arizona and obtained an

24  interest-only construction loan on June 3, 2005 through IndyMac.  IndyMac Mortgage

25  Services serviced the loan.  Mujeyi rolled his Construction Loan Agreement into a

26  permanent loan ("Mortgage") in the amount of $497,700 with IndyMac on May 23, 2007.

27

28

1   Mr. Mujeyi's Mortgage contract permits the Lender to purchase hazard insurance on

2   behalf of the borrower as follows:

3       If you fail to maintain the required hazard insurance, Lender may purchase

4       insurance on your behalf, and will bill you for the cost of premiums and fees

5       incurred in purchasing such insurance. Any amounts paid by Lender will become

6       an additional obligation secured under your loan.

7       . . . . .

8       Insurance obtained for you by Lender may be more expensive than, and may not

9       provide the same coverage as, insurance you could obtain on your own.

10

11       77.    Mr. Mujeyi obtained homeowner's hazard insurance through American

12   Family Insurance and paid an annual premium of approximately $975. Mr. Mujeyi's

13   homeowner insurance policy with American Family Insurance lapsed in or around

14   August of 2008. On or about October 28, 2010, IndyMac notified Mujeyi that it would

15   force-place insurance on his property through American Security. IndyMac ultimately

16   force-placed insurance on Mujeyi's property on or about November 25, 2010,

17   backdating the policy to October 22, 2009 (the "2009 Policy"). The 2009 Policy was

18   backdated despite the fact that there was no damage to the property or claims arising

19   out of the property during the lapse period.

20       78.    The annual premium for the force placed insurance policy with American

21   Security was $4,075.00 for $485,100 of coverage. IndyMac added the cost of the 2009

22   Policy to Mujeyi's escrow account.

23       79.    IndyMac renewed the force-placed policy on Mujeyi's home on October

24   22, 2010.

25       80.    On or about November 5, 2011, IndyMac once again renewed the force-

26   placed insurance and increased the premium to $4,136.00 for $492,377 worth of

27   coverage. This amount was charged to Mujeyi's escrow account on October 27, 2011,

28

81. In 2011, IndyMac charged a total of $8,211.00 of force placed hazard insurance to Mujeyi's escrow account, leaving him with a negative escrow balance.

82. On or around December of 2011, Mujeyi's mortgage payment had increased from $3,076.00 to $4,441.00, a forty-four percent increase, due to force-placed insurance. In January of 2012, Mujeyi contacted IndyMac to dispute the charges and ceased paying his mortgage, as he could no longer afford the monthly payment.

83. Mujeyi continued to dispute the force placed charges. On or about November 28, 2012, Mujeyi received a response from IndyMac, indicating that IndyMac had force-placed insurance on his property for the policy period of July 26, 2008 through January 24, 2012. It also noted that as of November 2011, Mujeyi's monthly payment was $4151.91, including the monthly escrow payment and shortage/advanced amount. Upon information and belief, IndyMac has refunded Mujeyi a portion of the force-placed insurance premiums after Mujeyi provided proof that he had obtained his own homeowner's insurance policy.

84. Mujeyi's preferred homeowner's insurance on the open market costs only $975 annually, while the insurance force-placed on his home costs $4,136.

85. IndyMac is attempting to foreclose on Mujeyi's home.

## CLASS ACTION ALLEGATIONS

### A. Class Definition

86. Plaintiffs bring this class action pursuant to Code of Civil Procedure Section 382 and Civil Code Section 1781 on behalf of themselves and all others similarly situated, with the Class being defined as follows:

> All individuals who were, at any time during the period within four years of the date this action was filed (the "Class Period"), charged for a force-placed insurance policy placed on their property by the OneWest Defendants through QBE, Assurant , and/or Assurant's subsidiary, American Security, and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

Plaintiffs reserve the right to modify or amend the definitions of the proposed

1   Class before the Court determines whether certification is appropriate.

2       87.   Plaintiff Doyle also brings this class action on behalf of a subclass of

3   elderly California residents:

4           **California subclass:** All individuals aged sixty-five and over residing in
5           California who were charged for a force-placed insurance policy placed on
6           their property by the OneWest Defendants through QBE, Assurant , and/or
            Assurant's subsidiary, American Security, and/or these companies'
7           affiliates, entities, or subsidiaries. Excluded from this class are
8           Defendants, their affiliates, subsidiaries, agents, board members,
            directors, officers, and/or employees.

9       88.   Defendants subjected Plaintiffs and the Class members to the same

10  unfair, unlawful, and deceptive practices and harmed them in the same manner. The

11  conduct described above is the Defendants' standard and undisputed business practice.

12      **B.     Numerosity (Code of Civil Procedure § 382; Civil Code § 1781(b)(1);**

13          **Federal Rule of Civil Procedure 23(a)(1))**

14      89.   The individual Class members are so numerous that joinder of all

15  members is impracticable.  The Defendants sell and service a large amount of

16  mortgage loans and insurance policies nationwide and in the States of California and

17  Arizona and have, as a general business practice, failed to comply with Federal and

18  California law.  Moreover, the individual Class members are ascertainable as the

19  names and addresses of all class members can be identified in the business records

20  maintained by the Defendants.  The precise number of Class members is certainly

21  more than a thousand but can only be obtained through discovery, but the numbers

22  are clearly more than can be consolidated in one complaint and impractical for each

23  to bring suit individually.  Plaintiffs do not anticipate any difficulties in the

24  management of the action as a class action.

25      **C.     Commonality (Code of Civil Procedure § 382; Civil Code § 1781(b)(2);**

26          **Federal Rule of Civil Procedure 23(a)(2) and (b)(3))**

27

28

90.     There are questions of law and fact that are common to the claims of Plaintiffs and Class.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

(a) Whether the premiums charged to Plaintiffs and the Class were *bona fide* and reasonable;

(b) Whether the kickbacks and commissions received and/or paid by the Defendant companies constituted unfair and deceptive business practices;

(c) Whether Defendants purposely placed higher-priced insurance premiums on Plaintiffs and the Class in order to maximize their own profits;

(d) Whether the OneWest Defendants breached the mortgage contract;

(e) Whether Defendants have unjustly enriched themselves at the expense of the Plaintiffs and the Class;

(f) Whether Defendants breached the implied covenant of good faith and fair dealing by charging their residential borrowers excessive amounts for force-placed insurance, a portion of which was paid back to the mortgage servicer in the form of commissions or kickbacks, and misrepresenting why the cost of force-placed insurance was excessive; and

(g) Whether the mortgage instrument contemplates or authorizes

1   Defendants to derive hidden financial benefits by force-placing the high

2   cost insurance premiums on Plaintiffs and the other members of the

3   Class.

4

5   **D.   Typicality (Civil Code § 1781(b)(3), Federal Rule of Civil Procedure**

6   **23(a)(3))**

7   91.   Plaintiffs are members of the Class as Defendants' own records plainly

8   reveal. Plaintiffs' claims are typical of the claims of the Class because of the similarity,

9   uniformity, and common purpose of the unlawful conduct of Defendants. Each Class

10   member has sustained, and will continue to sustain, damages in the same manner

11   as Plaintiffs as a result of Defendants' wrongful conduct.

12   **E.   Adequacy of Representation (Civil Code § 1781(b)(4), Federal Rule of**

13   **Civil Procedure 23(a)(4)):**

14   92.   Plaintiffs are adequate representatives of the Class and will fairly and

15   adequately protect the interests of the Class. Plaintiffs are committed to the vigorous

16   prosecution of this action and have retained competent counsel, experienced in

17   litigation of this nature, to represent them. There is no hostility between Plaintiffs and

18   the unnamed Class members. Plaintiffs anticipate no difficulty in the management of

19   this litigation as a class action.

20   93.   To prosecute this case, Plaintiffs have chosen counsel experienced in

21   class action litigation with the financial and legal resources to meet the substantial costs

22   and legal issues associated with this type of litigation.

23   **F.   Superiority (Code of Civil Procedure § 382; Federal Rule of Civil**

24   **Procedure 23(b)(3))**

25   94.   A class action is superior to individual actions in part because of the non-

26   exhaustive factors listed below:

27   (a) Joinder of all Class members would create extreme hardship and

28

-22-

CLASS ACTION COMPLAINT

1  inconvenience for the affected customers as they reside all across the
2  states;
3
4  (b) Individual claims by Class members are impractical because the costs to
5  pursue individual claims exceed the value of what any one Class member
6  has at stake.  As a result, individual Class members have no interest in
7  prosecuting and controlling separate actions;
8
9  (c) There are no known individual Class members who are interested in
10  individually controlling the prosecution of separate actions;
11
12  (d) The interests of justice will be well served by resolving the common
13  disputes of potential Class members in one forum;
14
15  (e) Individual suits would not be cost effective or economically maintainable
16  as individual actions; and
17
18  (f)  The action is manageable as a class action.
19
20  95.  In the alternative, this action is certifiable under the provisions of Fed. R.
21  Civ. P. 23(b)(1) & (2), which have been found applicable to the State of California,
22  because:
23  a.  Prosecuting separate actions by or against individual Class members
24  would create a risk of inconsistent or varying adjudications with respect to
25  individual Class members that would establish incompatible standards of conduct for
26  the party opposing the Class.
27  b.  Prosecuting separate actions by or against individual Class members
28

1   would create a risk of inconsistent or varying adjudications with respect to individual

2   Class members that would establish incompatible standards of conduct for the party

3   opposing the Class.

4         c.   Defendants have acted, or failed to act, in a manner generally

5   applicable to the Class, thereby making appropriate final injunctive relief or

6   corresponding declaratory relief with respect to the Class as a whole.

7         d.   Plaintiffs do not anticipate any difficulty in the management of this

8   litigation.

9

10                          FIRST CAUSE OF ACTION

11   BREACH OF CONTRACT (INCLUDING BREACH OF IMPLIED COVENANT OF

12        GOOD FAITH AND FAIR DEALING AS TO ALL CLASS MEMBERS)

13                      (As against the OneWest Defendants)

14        96.   Plaintiffs re-allege and incorporate the paragraphs above as if fully set

15   forth herein and further allege as follows.

16        97.   The OneWest Defendants have originated and/or serviced the

17   mortgage loans of Plaintiffs and the other members of the Class.

18        98.   Good faith and fair dealing is an element of every contract and imposes

19   upon each party a duty of good faith and fair dealing in its performance.  Common law

20   calls for substantial compliance with the spirit, not just the letter, of a contract in its

21   performance.

22        99.   In all of their actions described herein, Defendants have acted on their

23   own behalf and/or as the duly authorized agent of the owner or assignee of the

24   mortgage agreements of Plaintiffs and the Class members.  Defendants were

25   contractually obligated to service the loans of Plaintiffs and the Class members

26   pursuant to the terms of their mortgage agreements.

27        100.   Any discretionary authority granted to Defendants under the terms of the

28

-24-
CLASS ACTION COMPLAINT

1  mortgage contracts of Plaintiffs and the Class was subject to Defendants' implied duty

2  of good faith and fair dealing.  To the extent that the mortgage contracts of Plaintiffs and

3  the Class may permit Defendants to unilaterally force-place insurance, Defendants

4  nonetheless were obligated to exercise their discretion in good faith and were prohibited

5  from acting in bad faith for their own financial gain or to maximize their profits at the

6  borrowers' expense.

7      101.   The mortgage contracts and insurance policies of Plaintiffs and the Class

8  contained an implied covenant of good faith and fair dealing whereby Defendants

9  agreed to perform the obligations under the policies in good faith, to deal fairly with

10  Plaintiff and the Class, and not to charge excessive or unreasonable fees for the force-

11  placed insurance for the purposes of maximizing profits at the Class's expense.

12      102.   Defendants breached their duty of good faith and fair dealing in at

13  least the following respects:

14          (a) Using their discretion to choose an insurance policy in bad faith

15              and in contravention of the parties' reasonable expectations, by

16              purposefully selecting exorbitantly-priced force-placed

17              insurance policies to maximize their own profits;

18

19          (b) Failing to seek competitive bids on the open market and instead

20              creating "back room" deals whereby the insurance policies are

21              continually purchased through the same companies;

22

23          (c) Assessing excessive, unreasonable, and unnecessary

24              insurance policy premiums against Plaintiffs and Class and

25              misrepresenting the reason for the cost of the policies;

26

27          (d) Collecting a percentage of whatever premiums are charged to

28

-25-
**CLASS ACTION COMPLAINT**

1               Plaintiffs and the Class and not passing that percentage on to

2               the borrower, thereby creating the incentive to seek the highest-

3               priced premiums possible; and

4

5               (e) Retroactively placing the exorbitantly-priced policies for time

6               periods that had already passed.

7

8       103.  As a direct and proximate result of the aforementioned breaches of the

9  covenant of good faith and fair dealing, Plaintiffs and the Class have suffered damages.

10  Plaintiffs, on behalf of themselves and similarly situated Class members, seek a judicial

11  declaration determining that the terms of and the premiums charged for the force-placed

12  insurance violate the mortgage contract and the implied duties of good faith and fair

13  dealing.  Plaintiffs seek compensatory damages resulting from Defendants' breach of

14  their duties.  Plaintiffs further seek all relief deemed appropriate by this Court, including

15  attorney fees and costs.

16                        SECOND CAUSE OF ACTION

17                          UNJUST ENRICHMENT

18      (As against Defendants QBE, Assurant and American Security)

19       104.  Plaintiffs re-allege and incorporate the  paragraphs above as if full set

20  forth herein and further allege as follows.

21       105.  The Defendants QBE, Assurant and/or American Security, an Assurant

22  subsidiary, have received, and continue to receive, a benefit at the expense of the

23  Plaintiffs and the Class, and have knowledge thereof.

24       106.  The  QBE, Assurant and/or American Security, an Assurant subsidiary

25  Defendants have unlawfully and unfairly attempted to collect, and collected, excessive

26  amounts for force-placed insurance policies pursuant to lucrative prearranged

27  agreements with the OneWest Defendants.  Pursuant to these agreements, QBE,

28

CLASS ACTION COMPLAINT

1  Assurant and/or American Security have agreed to provide kickbacks to the OneWest

2  Defendants as a percentage of the outsized and excessive premiums which are

3  charged to the borrowers, but realized as profit by the QBE, Assurant and /or American

4  Security Defendants.   As part of these pre-arranged agreements, the QBE, Assurant

5  and/or American Security Defendants also have obtained lucrative servicing functions,

6  including, but not limited to, monitoring the OneWest Defendants' servicing portfolios to

7  detect uninsured properties, alerting the OneWest Defendants when there is a lapse in

8  insurance, and providing other back-office administrative functions for the OneWest

9  Defendants.  Accordingly, Defendants QBE, Assurant and/or American Security have

10  received benefits that they have unjustly retained at the expense of Plaintiffs and the

11  other members of the Class.

12       107.   The circumstances are such that it would be inequitable for the

13  Defendants to retain the benefit without paying the value thereof to Plaintiffs and the

14  other members of the Class.  Plaintiffs, on behalf of themselves and all similarly

15  situated individuals, demand judgment against the Defendants for compensatory

16  damages, pre and post judgment interest, attorney's fees, declaratory and injunctive

17  relief, costs incurred in bringing this action, and any other relief the Court deem just

18  and proper.

19                        THIRD CAUSE OF ACTION

20                       BREACH OF FIDUCIARY DUTY

21                    (As against the OneWest Defendants)

22       108.   Plaintiffs re-allege and incorporate the paragraphs above as if fully set

23  forth herein and further allege as follows.

24       109.   The OneWest Defendants hold funds in escrow on behalf of borrowers

25  whose mortgages they service. These funds are designated, in part, for the purpose of

26  paying insurance premiums when due, and any excess funds are to be returned to the

27

28

                                    -27-
                          CLASS ACTION COMPLAINT

                                    40

1    Plaintiffs and the other members of the Class under the terms of the mortgage

2    agreements.

3         110.    Fiduciary relationships exist between the Plaintiffs and the OneWest

4    Defendants. The OneWest Defendants have received a greater economic benefit than

5    that taken from a typical escrow transaction.  Specifically, the debtor-creditor

6    relationship transformed into a fiduciary relationship when the OneWest Defendants

7    took it upon themselves to manage borrowers' escrow accounts and withdrew money

8    from escrow to pay force-placed insurance premiums. These OneWest Defendants

9    violated their fiduciary duties to Plaintiffs and the other Class members when they

10   began receiving unlawful kickbacks or other compensation under the kickback scheme,

11   which is clearly a greater economic benefit than what was contemplated under the

12   mortgage.

13        111.    The OneWest Defendants breached their fiduciary duties to Plaintiffs and

14   the other Class members by (1) not acting in the best interest of Plaintiffs and the Class

15   memebrs when the OneWest Defendants profited, at the expense of Plaintiffs and the

16   Class members, from force-placed insurance policies that were purchased using escrow

17   funds held by the OneWest Defendants for the benefit of Plaintiffs and Class members,

18   and (2) not disclosing the kickback scheme to Plaintiffs and the Class members.  These

19   actions were undertaken by the OneWest Defendants in bad faith for their own benefit

20   and were not intended to benefit the Plaintiffs or the other Class members.

21        112.    As a direct result of the OneWest Defendants' actions, and the

22   subversion of the interests of the Plaintiffs and the Class to the OneWest Defendants'

23   own interests, in reaping extravagant and outrageous fees, Plaintiffs and all others

24   similarly situated have suffered injury in the form of unnecessary and excessive escrow

25   charges and a loss of funds from their escrow accounts.

26

27

28

-28-

CLASS ACTION COMPLAINT

## FOURTH CAUSE OF ACTION

### FINANCIAL ELDER ABUSE

#### (California Subclass as against the OneWest Defendants)

113. Plaintiffs re-allege and incorporate the paragraphs above as if fully set forth herein, and Plaintiff Doyle further alleges as follows on behalf of herself and a California Subclass of senior citizens.

114. The Defendants' conduct constitutes financial abuse under Cal. Welf. & Inst. Code § 15657.5 *et seq.*, as defined in Cal. Welf. & Inst. Code § 15610.30, which states, in pertinent part, as follows:

(a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

(2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

115. At all relevant times, Defendants took and/or assisted in the taking of property from Plaintiff Doyle and the Subclass for its own wrongful use.

116. The OneWest Defendants wrongfully charged Plaintiff Doyle and the California Subclass excessive, unlawful and unfair fees and costs when force-placing insurance with exorbitant premiums, including the cost of kickbacks, on Plaintiff Doyle and the California Subclass's property. These excessive charges have made Plaintiff Doyle and the California Subclass more vulnerable to foreclosure or have, in fact, pushed members of the California Subclass into foreclosure.

117. In performing these wrongful acts, the agents and employees of Defendants acted on behalf of Defendants.

1    118.    The conduct of Defendants was knowing, reckless, oppressive, fraudulent

2    and malicious within the meaning of Welf. & Inst. Code § 15657.5 et seq.

3    119.    Under Welf. & Inst. Code § 15657.5 et seq., Defendants are liable for

4    Plaintiff Doyle and the California Subclass's reasonable attorneys' fees and costs

5    incurred in investigating and litigating this claim.

6    120.    Under Civil Code § 3294 and Welf. & Inst. Code § 15657.5, Defendants

7    are liable for punitive damages.

8    121.    Under Civil Code § 3345, Defendants are liable for treble damages and

9    penalties because: (a) the Defendants knew their conduct was directed at senior

10   citizens; (b) Defendants' conduct caused a senior citizen to suffer substantial loss of

11   property and assets set aside for her retirement and essential to her health and welfare;

12   (c) Plaintiff Doyle is a senior citizen who is more vulnerable than other members of the

13   public to Defendants' conduct because of her age, impaired understanding, impaired

14   health or restricted mobility; and (d) Plaintiff Doyle and the California Subclass members

15   actually suffered substantial economic damages as a result Defendants' conduct.

16                          FIFTH CAUSE OF ACTION

17            VIOLATION OF THE CALIFORNIA BUSINESS & PROFESSIONS

18                          CODE, § 17200, et seq.

19                          (As against all Defendants)

20   122.    Plaintiffs re-allege and incorporates the paragraphs above as if fully set

21   forth herein and further alleges as follows.

22   123.    During the relevant period, Defendants have regularly conducted business

23   throughout the State of California.  The OneWest Defendants' scheme was devised,

24   implemented and directed from California. Accordingly, California's unfair competition

25   law applies to a class of borrowers, both within and outside of California, who have

26   been harmed as a result.  Moreover, California has a substantial interest in preventing

27

28

-30-

CLASS ACTION COMPLAINT

43

1   fraudulent practices within the State which may have an effect both in California and
2   throughout the rest of the country.
3       124.   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et*
4   *seq.* ("UCL") prohibits any "unlawful" business act or practice. Defendants have violated
5   section 17200's prohibition against engaging in unlawful acts or practices by violating
6   the common law including breach of contract, and the implied covenant of good faith
7   and fair dealing, unjust enrichment, and breach of fiduciary duty.
8       125.   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et*
9   *seq.* ("UCL") prohibits any "unlawful" business act or practice. Defendants have
10  violated section 17200's prohibition against engaging in unlawful acts or practices by
11  violating California's Financial Elder Abuse laws codified at Cal. Welf. & Inst. Code §
12  15657.5 *et seq.*
13      126.   The UCL also prohibits any "unfair" business act or practice. As detailed
14  in the preceding paragraphs, Defendants engaged in unfair business acts or practices
15  by, among other things, demanding and force-placing insurance not required by law, or
16  in amounts greater than required by law or necessary to secure the sums borrowed,
17  receiving and/or paying kickbacks for force-placed insurance, to the detriment of
18  Plaintiffs and other members of the proposed Classes.
19      127.   These business practices are also unfair because, *inter alia*, they are
20  contrary to the principle that (i) "lenders should avoid creating situations where a
21  building is over-insured," 74 Fed. Reg. 35914, 35918 (July 21, 2009); (ii) consumers
22  should receive "meaningful disclosure of credit terms," 15 U.S.C. § 1601(a); and other
23  clearly articulated principles of law.
24      128.   Defendants systematically engaged in these unfair and/or unlawful
25  business practices to the detriment of Plaintiffs and other members of the Class.
26      129.   The harm caused by these business practices vastly outweighs any
27  legitimate business utility they possibly could have.
28

-31-
CLASS ACTION COMPLAINT

44

130.   Plaintiffs and other members of the Class have been injured and have suffered a monetary loss as a result of Defendants' violations of the UCL.

131.   As a result of Defendants' violations of the UCL, Plaintiff and other members of the  Class are also entitled to recover attorneys' fees and costs to be paid by Defendants, as provided by California Code of Civil Procedure § 1021.5 and other applicable law.

## SIXTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

### (As against QBE, Assurant and American Security)

132.   Plaintiffs re-allege and incorporate the paragraphs above as if fully set forth herein and further allege as follows.

133.   Plaintiffs and the Class members have a business relationship with the OneWest Defendants pursuant to the mortgage contracts.  Plaintiffs and the Class have legal rights under these mortgage contracts.  For example, the Plaintiffs and the Class have a right not to be charged exorbitant premiums, including the cost of kickbacks to the OneWest Defendants, in bad faith for the forced-place insurance policies. Defendants QBE, Assurant, and American Security have knowledge of Plaintiffs' and the class's business relationship with the OneWest Defendants pursuant to the mortgage contracts.  QBE, Assurant and American Security are not parties to the mortgage contracts, nor are they third-party beneficiaries.  Further, Defendants QBE, Assurant, and American Security do not have any beneficial, economic or supervisory interest in the mortgage contracts.

134.   Defendants QBE, Assurant, and American Security intentionally and unjustifiably interfered with the Plaintiffs' and the Class's rights under the mortgage contracts, as described above by, *inter alia*, paying kickbacks to the OneWest

1  Defendants and by charging for administering the OneWest loan portfolio, which are

2  purposefully and knowingly charged to Plaintiffs and the other members of the Class.

3      135.  Plaintiffs and the Class have been damaged as a result of QBE, Assurant,

4  and American Security's interference with their mortgage contracts by being charged

5  bad faith, exorbitant and illegal charges for force-placed insurance in contravention of

6  their rights under the mortgages. Plaintiffs and the Class members seek a judgment in

7  their favor against QBE for the actual damages suffered by them as a result of QBE and

8  Assurant's tortious interference.  Plaintiffs also seek all costs of litigating this action

9  including attorney's fees.

10                    <u>SEVENTH CAUSE OF ACTION</u>

11        <u>TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP</u>

12                  <u>(All against the OneWest Defendants)</u>

13      136.  Plaintiffs re-allege and incorporate the paragraphs above as if fully set

14  forth herein and further allege as follows.

15      137.  To the extent that Plaintiffs and members of the Class are not in contract

16  with the OneWest Defendants, this claim is pled in the alternative on behalf of Plaintiffs

17  and the Class against the OneWest Defendants.

18      138.  Upon information and belief, the OneWest Defendants sold Plaintiff

19  Mujeyi's mortgage to Deutsche Bank, and thus Mujeyi has a business relationship with

20  Deutsche Bank.

21      139.  Upon information and belief, the OneWest Defendants have also sold the

22  mortgages of Plaintiff Doyle and the other Class members to other, third-party banks

23  ("Third-Party Banks").  Plaintiffs and the Class members have a business relationship

24  with the Third-Party Banks pursuant to their mortgage contracts.

25      140.  Plaintiffs and the Class have legal rights under these mortgage contracts.

26  For example, the Plaintiffs and the Class have a right not to be charged exorbitant

27  premiums, including the cost of kickbacks to the OneWest Defendants, in bad faith for

28

-33-

CLASS ACTION COMPLAINT

46

1   the forced-place insurance policies.  The OneWest Defendants have knowledge of

2   Plaintiffs' and the Class's business relationship with the Third-Party Banks, because the

3   OneWest Defendants sold the mortgages of Plaintiffs and the Class to the Third-Party

4   Banks.  The OneWest Defendants intentionally and unjustifiably interfered with the

5   Plaintiffs' and the Class's rights under the mortgage contracts, as described above by,

6   *inter alia*, receiving kickbacks from insurance companies for force-placing exorbitantly

7   priced insurance on Plaintiffs and members of the Class, which are purposefully and

8   knowingly charged to Plaintiffs and the other members of the Class.  This scheme of

9   illegal kickbacks may potentially or has already pushed Plaintiffs and many members of

10  the Class into foreclosure.

11        141.   As described above, the Third-Party Banks also suffer economic harm by

12  losing in the proceeds of a house sold at a foreclosure auction, since the Third-Party

13  Banks only receive whatever money is left after expenses, which includes the cost of

14  force-placed insurance.  Therefore, the OneWest Defendants have disrupted the

15  business relationship between Plaintiffs and members of the Class and the Third-Party

16  Banks who own their mortgages.

17        142.   Plaintiffs and the Class have been damaged as a result of the OneWest

18  Defendants' interference with their mortgage contracts by being charged bad faith,

19  exorbitant and illegal charges for force-placed insurance in contravention of their rights

20  under the mortgages.  Plaintiffs and the Class members seek a judgment in their favor

21  against QBE for the actual damages suffered by them as a result of QBE and

22  Assurant's tortious interference.  Plaintiffs also seek all costs of litigating this action

23  including attorney's fees.

24                    EIGHTH CAUSE OF ACTION

25                      EQUITABLE RELIEF

26                    (As against all Defendants)

27        143.   Plaintiffs re-allege and incorporate the paragraphs above as if fully set

28

-34-
CLASS ACTION COMPLAINT

47

1    herein and further allege as follows.

2        144.   Plaintiffs have no adequate remedy at law to address the wrongful

3    conduct engaged in by Defendants.  Thus, Plaintiffs ask the Court to enjoin the

4    Defendants from the practice of collecting fees and/or kickbacks for the force-placement

5    of insurance on the grounds that the fees and/or kickbacks are neither disclosed nor

6    permitted by Class members' mortgage contracts.  Plaintiffs further ask the Court to

7    enjoin the Defendants from force-placing insurance in excess of their mortgage balance

8    on the grounds that this is disallowed by their mortgage.

9        145.   Plaintiffs ask the Court to award restitution to return all charges

10   Defendants or their affiliates received in connection with the purchase of force-placed

11   insurance.

12       146.   Plaintiffs ask the Court to order Defendant to remove from Class

13   members' escrow accounts all charges that are attributable to fees and/or kickbacks

14   paid to Defendants or their affiliates for the purchase of force-placed insurance.

15

16                          **PRAYER FOR RELIEF**

17       WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly

18   situated, demand judgment against Defendants as follows:

19       (1)    An order certifying the Class as requested herein and declaring Plaintiffs

20   and their counsel to be representatives of the Class;

21       (2)    Awarding damages sustained by Plaintiffs and the Class as a result of

22   Defendants' breach of contract and the implied covenant of good faith and fair dealing,

23   together with pre-judgment interest;

24       (3)    Finding that Defendants have been unjustly enriched and requiring

25   Defendants to  refund all unjust benefits to Plaintiffs and the Class, together with pre-

26   judgment interest;

27       (4)    Awarding Plaintiffs and the Class costs and disbursements

28

1  and reasonable allowances  for  the  fees of Plaintiffs' and the Class's counsel and
2  experts, and reimbursement of expenses;
3        (5)    Awarding restitution to Plaintiffs and the Class members;
4        (6)    Awarding equitable relief, including enjoining Defendants from continuing
5  the unlawful practices set forth herein;
6        (7)    Exemplary damages;
7        (8)    Such other and further relief the Court deems just and equitable.
8
9                        **DEMAND FOR JURY TRIAL**
10       Plaintiffs and the Class request a jury trial for any and all the claims for which a
11  trial by jury is permitted by law.
12
13  Dated: June 21, 2013                DEBLASE BROWN EYERLY LLP
14
15                                     By:
16                                     Michael Eyerly, Esq.
                                       eyerly@dbelegal.com
17                                     680 South Santa Fe Avenue
                                       Los Angeles, CA 90021
18                                     Tel.:  310.575.9955
                                       Fax:  310.575.9919
19
20                                     Catherine E. Anderson, Esq.
                                       Oren Giskan, Esq.
21                                     GISKAN SOLOTAROFF ANDERSON &
                                       STEWART, LLP
22                                     11 Broadway, Suite 2150
                                       New York, NY 10004
23                                     Tel:   212. 847.8315
24                                     Fax:   646.520.3236
25                                     Attorneys for Plaintiffs and the Class
26
27
28
                              -36-
                     CLASS ACTION COMPLAINT

49

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (new)
LASC Approved 04/11    **STIPULATION – EARLY ORGANIZATIONAL MEETING**    Page 1 of 2

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    (INSERT DATE)                                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

LACIV 229 (new)
LASC Approved 04/11          **STIPULATION – EARLY ORGANIZATIONAL MEETING**          Page 2 of 2

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i.    File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii.   Include a brief summary of the dispute and specify the relief requested; and

        iii.  Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i.    Also be filed on the approved form (copy attached);

        ii.   Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)<br>LASC Approved 04/11       **STIPULATION – DISCOVERY RESOLUTION**       Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR_____)

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR_____)

Date:

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR_____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):                    FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - [ ] Request for Informal Discovery Conference
   - [ ] Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

55

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                          FAX NO. (Optional):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)
LASC Approved 04/11          **STIPULATION AND ORDER – MOTIONS IN LIMINE**          Page 1 of 2

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____     _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____

_____
JUDICIAL OFFICER

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**

**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT -- CLASS ACTION CASES    B C 5 1 3 2 9 2

Case Number _____

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge Lee Smalley Edmon | 322 | 1702 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| Judge Kenneth Freeman | 310 | 1412 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Anthony J. Mohr | 309 | 1409 |
| Judge William F. Highberger | 307 | 1402 |

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure section 170.6 must be made 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

COMPLAINTS: All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

CROSS-COMPLAINTS: Without leave of court first being obtained, no cross complaint may be filed by any party after their answer is filed. Cross complaints shall be served within 30 days of the filing date and proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under the Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Given to Plaintiff/Cross-Complainant/Attorney of Record on _____

JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

59

**EXHIBIT 2**

1  Frank G. Burt
   fgb@jordenusa.com
2  (*Pro hac Vice* Application Pending)
   W. Glenn Merten
3  wgm@jordenusa.com
   (*Pro hac Vice* Application to be filed)
4  JORDEN BURT LLP
   1025 Thomas Jefferson St., NW
5  Suite 400 East
   Washington, DC  20007
6  Telephone:  (202) 965-8100
   Facsimile:   (202) 965-8104
7
8  Mark Neubauer (SBN 73728)
   mneubauer@steptoe.com
9  STEPTOE & JOHNSON LLP
   2121 Avenue of the Stars, Suite 2800
10 Los Angeles, California  90067-5052
   Telephone:  (310) 734-3200
11 Facsimile:   (310) 734-3300
12
   Attorneys for Defendants
13 ASSURANT, INC. and AMERICAN SECURITY
   INSURANCE COMPANY
14
15              **UNITED STATES DISTRICT COURT**
16              **CENTRAL DISTRICT OF CALIFORNIA**
17
   GERALDINE DOYLE and KUDA          Case No.:
18 MUJEYI, individually and on behalf of
   all others similarly situated,        **DECLARATION OF BEECH**
19                                         **TURNER IN SUPPORT OF**
                                          **NOTICE OF REMOVAL**
20          Plaintiffs,
21      vs.
22
   ONEWEST BANK, FSB, INDYMAC
23 BANK, FSB, FINANCIAL FREEDOM
   SENIOR FUNDING CORPORATION,
24 LLC, QBE INSURANCE GROUP,
   ASSURANT, INC., and AMERICAN
25 SECURITY INSURANCE
26 COMPANY, and DOES 1-100,
27
            Defendants.
28

   _____
            DECLARATION OF BEECH TURNER IN SUPPORT OF NOTICE OF REMOVAL

**EXHIBIT** *2*

1    I, Beech Turner, declare as follows:

2    1.    At all relevant times, I am and have been Vice President, Finance for

3    American Security Insurance Company ("ASIC").

4    2.    I am over 21 years of age and competent to testify to the statements

5    set forth herein.

6    3.    I make this Declaration, pursuant to 28 U.S.C. § 1746, in support of

7    the Notice of Removal filed by ASIC and Assurant, Inc. ("Assurant"), and based

8    upon my review of the Class Action Complaint in the above-captioned action (the

9    "Complaint") and my personal knowledge and review of ASIC's and Assurant's

10   business records, which are maintained under my custody and control with entries

11   made in the ordinary course of business at or near the event reflected in those

12   business records.

13   4.    Plaintiffs seek to represent a class consisting of:

14       All individuals who were, at any time during the period within four
15       years of the date this action was filed (the "Class Period"), charged for a
         force-placed insurance policy placed on their property by the OneWest
16       Defendants through QBE, Assurant, and/or Assurant's subsidiary,
17       American Security, and/or these companies' affiliates, entities, or
         subsidiaries.  Excluded from this class are Defendants, their affiliates,
18       subsidiaries, agents, board members, directors, officers, and/or
19       employees.

20   Compl. ¶ 86.

21   5.    Defendant Assurant is, and was at the time of the filing of the

22   Complaint, a Delaware corporation whose shares trade on the New York Stock

23   Exchange under the symbol AIZ, and whose principal place of business is New

24   York, New York.  Defendant ASIC is, and was at the time of the filing of the

25   Complaint, a Delaware corporation with its principal place of business in Atlanta,

26   Georgia.

27   6.    ASIC's relationship with OneWest Bank, FSB ("OneWest") began in

28   October 2010.  Under my supervision and control, ASIC employees conducted a

1   review of ASIC's business records relating to lender-placed insurance policies
2   ASIC underwrote from October 2010 through June 2013 that were placed on real
3   property by OneWest.

4         7.    From October 2010 through June 2013, ASIC underwrote 79,840
5   lender-placed insurance policies that were placed on real property by OneWest.
6   Of those 79,840 lender-placed insurance policies, 65,136 were lender-placed
7   hazard insurance policies.  Of the 79,840 lender-placed insurance policies, 14,106,
8   or less than 18% of the total lender-placed insured policies at issue, were issued in
9   connection with real property located in California.  Of the 65,136 lender-placed
10   hazard insurance policies, 12,482, or less than 20% of the total lender-placed
11   hazard insurance policies at issue, were issued in connection with real property
12   located in California.

13         8.    ASIC collected $184,154,325 in net written premium in connection
14   with the 79,840 lender-placed insurance policies issued from October 2010
15   through June 2013 that were placed on real property by OneWest.  Of the total
16   $184,154,325 ASIC collected $161,892,016 in net written premium in connection
17   with the 65,136 lender-placed hazard insurance policies issued from October 2010
18   through June 2013 that were placed on real property by OneWest.

19         9.    The Complaint also seeks injunctive relief against Defendants
20   concerning the pricing of the subject policies, the cost of which injunctive relief, if
21   ordered, would increase the amount in controversy due to increased administrative
22   costs, re-structuring of products, and other negative impacts on ASIC's business.

23
24       I declare under penalty of perjury that the foregoing is true and correct.
25
26   Executed August 14, 2013 at Atlanta
27
28   Beech Turner

2

1

**PROOF OF SERVICE**
F.R.C.P. 5 / C.C.P. § 1013a(3)/ Cal. R. Ct. R. 2.260

2

I am a resident of, or employed in, the County of Los Angeles.  I am over the age of 18 and not a party to this action.  My business address is:  Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, California 90067.

3

4

5

On **August 14, 2013,** I served the following listed document(s), by method indicated below, on the parties in this action:

6

7

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

8

9

*SEE ATTACHED SERVICE LIST*

☒ **BY U.S. MAIL**

10

By placing ☐ the original / ☒ a true copy thereof enclosed in a sealed envelope(s), with postage fully prepaid, addressed as per the attached service list, for collection and mailing at Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, California 90067, following ordinary business practices.  I am readily familiar with Steptoe & Johnson LLP's practice for collection and processing of documents for mailing.  Under that practice, the document is deposited with the United States Postal Service on the same day as it is collected and processed for mailing in the ordinary course of business.

11

12

13

14

15

☐ **BY ELECTRONIC SERVICE via electronic filing service provider LexisNexis**

By electronically transmitting the document(s) listed above to LexisNexis File and Serve, an electronic filing service provider at www.fileandserve.lexisnexis.com, from the email address _____@steptoe.com, at approximately _____. To my knowledge, the transmission was reported as complete and without error.  *See* Cal. R. Ct. R. 2.253, 2.255, 2.260.

☐ **BY OVERNIGHT DELIVERY**

16

By delivering the document(s) listed above in a sealed envelope(s) or package(s) designated by the express service carrier, with delivery fees paid or provided for, addressed as per the attached service list, to a facility regularly maintained by the express service carrier or to an authorized courier or driver authorized by the express service carrier to receive documents.  **Note:** Federal Court requirement: service by overnight delivery was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.

17

18

19

20

21

☐ **BY EMAIL**

By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list from the email address _____@steptoe.com, at approximately _____. To my knowledge, the transmission was reported as complete and without error.  Service by email was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.  *See* Cal. R. Ct. R. 2.260.

22

     I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.     Executed on August 14, 2013 at Los Angeles, California.

23

24

Maria Rodriguez
Type or Print Name

Signature

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Doc. # DC-264370 v.3

1

## SERVICE LIST

2

3   Catherine E. Anderson, Esq.              Attorneys for Plaintiffs Geraldine Doyle
    Oren Giskan, Esq.                        and Kuda Mujeyi
4   GISKAN SOLOTAROFF
    ANDERSON & STEWART, LLP
5   11 Broadway, Suite 2150
    New York, NY  10004
6   Tel:   (212) 847-8315
    Fax:   (646) 520-3237
7

8   Michael C. Eyerly, Esq.
    DEBLASE BROWN EYERLY LLP
9   680 S. Santa Fe Avenue
    Los Angeles, California  90021
10  Tel:   (310) 575-9955
    Fax:   (310) 575-9919
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Doc. # DC-264370 v.3

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge      S. James Otero      and the assigned Magistrate Judge is      John E. McDermott      .

The case number on all documents filed with the Court should read as follows:

## 2:13CV5951 SJO JEMx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 14, 2013_____
Date

By   J.Prado_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Geraldine Doyle and Kuda Mujeyi, individually and on behalf of all others similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
OneWest Bank, FSB, IndyMac Bank, FSB, Financial Freedom Senior Funding Corporation, LLC, QBE Insurance Group, Assurant, Inc., and American Security Insurance Company, and Does 1-100

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Giskan Solotaroff Anderson & Stewart, LLP, 11 Broadway, Suite 2150, New York, NY 10004, 212-847-8315
Deblase Brown Eyerly LLP, 680 S. Santa Fe Avenue, Los Angeles, CA 90021, 310-575-9955

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Jorden Burt LLP, Steptoe & Johnson LLP, 1025 Thomas Jefferson St., NW, Suite 400 East, Washington, DC 20007, 202-965-8100
Mark A. Neubauer (SBN 73728), Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, CA 90067 310-734-3200

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** Amount not specified

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of contract and implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, violation of the California Welfare and Institutions Code, § 15657.5, et seq., violation of the California Business & Processions Code, § 17200, et seq., tortious interference with a business relationship

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV13- 5951

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13) CIVIL COVER SHEET Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | New York |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, Orange County | Delaware, New York, Georgia, Australia |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Arizona |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Mark A. Neubauer_ DATE: August 14, 2013

Mark A. Neubauer

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

**Key to Statistical codes relating to Social Security Cases:**

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com