1
2
3
4
5

Catherine E. Anderson (Pro Hac Pending)
canderson@gslawny.com
Oren Giskan (Pro Hac Pending)
GISKAN SOLOTAROFF
ANDERSON & STEWART, LLP
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 520-3237

6
7
8
9

Michael C. Eyerly (SBN 178693)
eyerly@dbelegal.com
DEBLASE BROWN EYERLY LLP
680 S. Santa Fe Avenue
Los Angeles, California 90021
Tel: (310) 575-9955
Fax: (310) 575-9919

10

Attorneys for Plaintiff

11

12

**UNITED STATES DISTRICT COURT**

13

**CENTRAL DISTRICT OF CALIFORNIA**

14

15
16
17

GERALDINE DOYLE, individually
and on behalf of all others similarly
situated,

Plaintiff,

18

v.

19
20
21
22

ONEWEST BANK,N.A.,
FINANCIAL FREEDOM
ACQUISITION, LLC, BALBOA
INSURANCE COMPANY,  and
DOES 1-100,

Defendants.

23
24
25
26
27
28

Case No.: 2:13-cv-05951-SJO-JEM

Assigned to the
Honorable S. James Otero

THIRD AMENDED CLASS
ACTION COMPLAINT FOR

1.  Breach of Contract
2.  Unjust Enrichment
3.  Breach of Fiduciary Duty
4.  Financial Elder Abuse
5.  Violations of Bus. & Prof. Code
    Section 17200
6.  Tortious Interference with
    Business Relationship
7.  Equitable Relief

DEMAND FOR JURY TRIAL

Complaint Filed: June 24, 2013
Second Amended Complaint:
November 12, 2013

Plaintiff, Geraldine Doyle, on behalf of herself and a class of similarly situated persons who were charged for forced placed insurance by Defendants in connection with their home mortgages, bring this action against Defendants OneWest Bank, N.A. (formerly known as OneWest Bank, FSB) ("OneWest"), Financial Freedom Acquisition, LLC ("Financial Freedom") (collectively, the "OneWest Defendants"), and Balboa Insurance Company ("Balboa"), and alleges as follows:

## INTRODUCTION

1.      This is a class action lawsuit filed to redress injuries that Plaintiff and the Class have suffered, and will continue to suffer, as a result of Defendants' practices relating to force-placed insurance.

2.      Defendants have engaged in a pattern of unlawful, deceptive, unfair, and unconscionable profiteering and self-dealing with respect to force-placed insurance policies procured in connection with the residential mortgage loans of Plaintiff and the proposed Class.

3.      Defendants' unlawful actions include, *inter alia*, purchasing unconscionably high-priced insurance policies, having pre-arranged agreements to purchase force-placed insurance from Balboa without seeking competitive bids on the open market in order to maximize their own profits, backdating the force-placed policies to charge for retroactive coverage, and giving and receiving "commissions" or "kickbacks" for the procurement of the force-placed policies. These actions constitute a pattern of exploitative profiteering and self-dealing against the interest of the named Plaintiff and the other Class members.

4.      As detailed more fully below, the unlawful scheme usually begins when a homeowner's insurance policy has lapsed, often because

the homeowner is already struggling to pay on a costly mortgage (often substantially greater than the value of the home), or sometimes due to no fault of the homeowner, for example, when an insurance company declines to continue insuring the home and the homeowner does not receive notice of the cancellation or a clerical error at the insurance company mistakenly shows that a policy has expired.

5.     Once an insurance policy has lapsed, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium.

6.     Instead of seeking either to maintain the borrower's delinquent existing policy or obtain bids for the force-placed insurance on the open market, the mortgage servicers have entered into exclusive relationships with certain force-placed insurance providers and continually purchase the force-placed insurance policies from these same providers.

7.     Accordingly, no arms-length transactions are taking place.

8.     Moreover, mortgage service providers often retroactively place the force-placed insurance policy on the property for a period of time which has passed.  In these situations, the borrowers are charged an unreasonable premium for the retroactive force-placed insurance, despite the fact that the time has lapsed and no claims were made during the lapsed period.

9.     This retroactively force-placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has already stated that insurance is "prospective in nature" and that policies should not be backdated.

10.    Homeowners' mortgage payments often include an amount to be placed in escrow so that the mortgage servicers can pay the insurance

when it is due.  However, mortgage servicers sometimes stop forwarding the homeowner's insurance payments to the insurance company and then purchase force-placed insurance for the lapsed policy.  This occurs even when the borrower has paid enough into escrow to cover the insurance payments.

11.    These fraudulent practices have recently come under fire by all fifty State Attorneys General.  Pursuant to their nation-wide investigation into lenders and mortgage servicers related to the housing and foreclosure crisis, they have recently proposed Settlement Terms, several of which involve force-placed insurance.

12.    The proposed settlement terms include, among other things, the following proposed restrictions: (1) mortgage servicers are prohibited from force-placing insurance when the servicer knows, or has reason to know, that the borrower has a policy in effect that meets the minimum requirement of the loan documents; (2) mortgage servicers cannot force-place insurance that is in excess of the replacement cost of the improvements on the mortgaged property; (3) mortgage servicers are prohibited from purchasing the force-placed insurance from a subsidiary, affiliate, or any entity in which they have an ownership interest; (4) mortgage servicers are prohibited from splitting fees, giving or accepting kickbacks or referral fees, or accepting anything of value in relation to the purchase or placement of the force-placed insurance; (5) mortgage servicers have to make reasonable efforts to continue or reestablish the borrower's existing insurance policy if there is a lapse in payment; and (6) the mortgage servicer is required to purchase the force-placed insurance for a commercially reasonable price.

13.    As the State Attorneys General have recognized, the practice of

THIRD AMENDED CLASS ACTION COMPLAINT

1  force placing insurance on homeowners has contributed to and
2  exacerbated the foreclosure crisis.  When the excessively priced insurance
3  is force-placed on homeowners, already struggling to keep up with their
4  mortgage payments, it often pushes those homeowners into foreclosure.
5  The force-placed insurance premium is placed right into the borrower's
6  mortgage payment, raising the amount of that payment to far more than
7  what the borrower is able to pay.

8        14.    Force-placed insurance policies are generally meant to protect
9  a mortgagee's interest in the borrower's property when the borrower's
10 insurance policy has lapsed.  Defendants, however, have turned them into
11 a severely inflated profit-making machine for themselves at the expense of
12 the homeowner.

13       15.    Mortgage servicers – like Financial Freedom here – are
14 companies that contract with the owners/investors of residential mortgage
15 loans to administer those loans on behalf of the owners/investors.  They
16 are responsible for the day-to-day management of the mortgage loan
17 account, including collecting and crediting the monthly loan payments,
18 handling the escrow account, and otherwise handling customer service and
19 management of the mortgage loans within their servicing portfolio.

20       16.    Mortgage servicers do not actually own the mortgages that they
21 service. Instead, they simply contract with the owners/investors of the
22 mortgage loans to manage the loans in their portfolio on the
23 owners/investors behalf and receive various fees in return.  These fees are
24 paid by the owners/investors who own the beneficial interest in those loans.

25       17.    Because they do not own the loans that they service, mortgage
26 servicers do not incur a financial loss if a borrower fails to pay the
27 mortgage, or if the loan goes into foreclosure.

28

18.     The premiums on force-placed insurance policies generally cost at least five to six times, and often up to ten times, more than what the borrower was either paying originally for homeowner's insurance or what the borrower could obtain on the open market.

19.     The force-placed insurance policies are extremely lucrative for the insurance providers and generate profit margins unheard of elsewhere in the insurance industry.

20.     The force-placed insurance policies are not just lucrative for the insurance providers.  The mortgage servicers also reap significant profits when a struggling homeowner's insurance policy lapses.

21.     The mortgage servicers are paid commissions or kickbacks from the force-placed insurance companies once one of the high-priced, force-placed, insurance policies is purchased.  These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy.

22.     This arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy that it can because the higher the cost of the insurance policy, the higher the commission or kickback to the mortgage servicer.

23.     The full price of the force-placed insurance policy (without accounting for the kickback that is paid back to the servicer) is placed upon the borrower by the mortgage servicer and can often force an already struggling homeowner into foreclosure.

24.     In some instances, premiums for force-placed insurance have been placed on borrowers that are in excess of their mortgage's face value and the property's overall worth.

///

25.    Mortgage servicers consistently choose force-placed insurance arrangements that reward themselves at the expense of the borrowers. The National Association of Insurance Commissioners stated that mortgage servicers "have no incentive to select a competitively priced product" but instead would select one "where they are provided with an incentive or inducement to enter into the transaction."

26.    Borrowers are at the complete mercy of the mortgage servicers and their arrangements with the insurance providers.  Borrowers can select a lender or mortgage broker for their loan but cannot select what company services that loan.  Indeed, mortgage loans are often sold shortly after origination and change hands many times as they are sold in the market.

27.    Moreover, this scheme does not injure the borrower alone.  As explained above, the unreasonable cost of the force-placed insurance can often push a homeowner into foreclosure.  This proves to be extremely lucrative for the mortgage servicer and usually a considerable loss for the ultimate owner of the mortgage – i.e., the investors in mortgage-backed securities.

28.    The proceeds of a house sold at a foreclosure auction will go to the mortgage holder, i.e., the investors.  However, the mortgage holders only receive whatever money is left after expenses, which includes the cost of force-placed insurance.  Therefore, it is in the interest of a mortgage servicer to place a high-cost force placed policy on a struggling borrower, which comes at the expense not only of the borrower but the mortgage holders/investors.  The mortgage servicer will collect a huge profit (much more than the $50 it was making in servicing the loan), while the borrowers and investors are the ultimate losers.

///

## **PARTIES**

29.    **Plaintiff Geraldine Doyle** is, and at all relevant times has

been, a resident of Los Angeles County, California.

30.    **Defendant OneWest Bank, N.A. (formerly known as**

**OneWest Bank, FSB) ("OneWest"),** is a federally chartered banking

company, owned by OneWest Bank Group LLC, a Delaware corporation,

with offices located at 888 East Walnut Street, Pasadena, CA 91101.

OneWest Bank acquired certain assets and limited liabilities of IndyMac

Federal Bank, FSB ("IndyMac") from the Federal Deposit Insurance

Company ("FDIC") which had taken over IndyMac in 2008.  Upon

information and belief, OneWest Bank acquired from the FDIC the

mortgage loans and/or mortgage loan servicing rights of Plaintiff Doyle and

other members of the Class which previously had been owned and/or

serviced by IndyMac and/or its subsidiary, Financial Freedom Senior

Funding Corporation.

31.    **Defendant Financial Freedom Acquisition LLC** ("Financial

Freedom") is a Delaware corporation and a division of OneWest with its

principal place of business at 7595 Irvine Venter Drive, Suite 250, Irvine,

CA 92618.  Financial Freedom is a loan servicer for OneWest mortgage

loans, including Plaintiff Doyle's mortgage.

32.    **Defendant Balboa Insurance Company ("Balboa")** maintains

its corporate headquarters at 3349 Michelson Drive, Suite 200, Irvine,

California 92412-8881.  Balboa specializes in insurance products for

financial institutions and mortgage lenders.  Balboa issued the force placed

hazard insurance policy on behalf of OneWest/Financial Freedom on

Plaintiff Doyle's property.

///

33.   The true names and capacities, whether individuals, corporate, or otherwise of Defendants, sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names and capacities.  Plaintiff will seek leave to amend this Complaint to include said Defendants' true names when they have been ascertained.  Plaintiff is informed and believes, and upon such information and belief hereby alleges, that each of the Defendants sued herein as a DOE Defendant is liable or responsible for the events and happenings alleged in this Complaint and by their conduct directly and proximately caused Plaintiff and the Class to sustain the injuries and damages alleged herein.

34.   The term "Defendants," as used herein, shall include the Defendant DOES 1 through 100, inclusive.

## JURISDICTION AND VENUE

35.   This Court has jurisdiction pursuant to 28 U.S. C. §1441. Plaintiff brings this action as a class action on behalf of herself and all others similarly situated pursuant to California Code of Civil Procedure §382.

36.   This Court has jurisdiction over Defendants pursuant to California Code of Civil Procedure §410.10 because Defendants are headquartered in California and conduct business and have extensive contacts throughout California, including Los Angeles County.

37.   The amount in controversy for the individual Plaintiff and for each Class member is less than $75,000 per Class member.

38.   Venue is proper in this Court under California Code of Civil Procedure §§395 and 395.5 because Defendants do business in Los

1   Angeles County and each of the Defendants maintains its corporate

2   headquarters in California.  Venue is also proper in is County as all

3   Defendants conduct substantial business activity, including activities

4   related to and involving force-placed insurance, in this County.

5

6                           **FACTUAL ALLEGATIONS**

7        39.   Endemic to the force-placed insurance industry are the outsized

8   and unconscionable profits, which the mortgage lenders, mortgage

9   servicers and force-placed insurers reap through kickbacks and other tying

10  arrangements, all at the expense of the unsuspecting borrower.  Defendant

11  Balboa artificially inflates the premiums charged to consumers, resulting in

12  premiums several times greater than those available to the consumer in the

13  open market. *American Banker* reported that "[t]hough part of the extra

14  expense can be explained by the higher risks associated with insuring the

15  homes of delinquent borrowers, force-placed policies generate profit

16  margins unheard of elsewhere in the insurance industry—even after

17  accounting for the generous commissions and other payments that

18  servicers demand."  *See* J. Horowitz, *Ties to Insurers Could Land Mortgage*

19  *Servicers in More Trouble*, AM. BANKER (Nov. 10, 2010), *available at*

20  http://www.americanbanker.com/issues/175_216/ties-to-insurersservicers-

21  in-trouble-1028474-1.html.

22       40.   When a mortgage servicer force places an insurance policy on

23  a borrower, a percentage of the premium of the force-placed insurance

24  policy – the entirety of which is usually charged to borrower's mortgage

25  account – is paid back to the mortgage servicer or a related entity in the

26  form of "kickbacks" and/or unearned "commissions," even though there is

27  no work performed by the mortgage servicer in connection with the

28

1   individual insurance placement.  When a mortgage servicer notifies a

2   borrower that a force-placed insurance policy has been secured and

3   retroactively placed on the borrower's property, the mortgage servicer

4   routinely fails to  disclose the profits or financial windfalls it has derived as a

5   result, and at the borrower's expense.

6       41.    Regulators have begun to take notice.  Indeed, after pressure

7   from the California Insurance Commissioner, one lender placed provider

8   announced that it will be slashing its force-placed insurance rates by

9   approximately 30%.  Dave Jones, the California Insurance Commissioner

10  released a statement saying, "[m]y directive for insurers to submit new rate

11  filings, and subsequent review of those filings, confirmed that rates *were*

12  *indeed excessive and needed to be lowered*" (emphasis added). *See*

13  Bibeka Shrestha, *Assurant to Drastically Cut Force-Placed Rates in Calif*.

14  *available at* http://www.law360.com/articles/388842/*print?section=privacy*

15      42.    Defendants here have improperly engaged in self-dealing at the

16  expense of Plaintiff and the Class, in a manner not disclosed by the

17  mortgage nor within the reasonable contemplation of the parties by

18  charging Plaintiff and the other members of the Class the full amount of the

19  exorbitantly-priced, force-placed insurance policies and paying and

20  receiving a percentage of the premium to each other, thereby enabling

21  Defendants to earn a hidden profit and financial windfall.

22      43.    The OneWest Defendants have chosen insurance policies from

23  Balboa with excessively priced insurance premiums because of the

24  benefits inuring to Defendants.  These policies violate the mortgage

25  contract because they exceed the cost of the services and are not

26  reasonable or appropriate to protect the note holder's interest in the

27  property and rights under the security instrument.

28

44.    Borrowers, like Plaintiff and the other Class Members, are typically notified by mail or in their mortgage contracts that the cost of the force placed insurance may be higher than the amount they would typically pay for insurance obtained on the open market.

45.    These notices usually state that the insurance will cover the lender, but may or may not protect the borrower or the contents of the property, and that the insurance obtained by the lender may be more expensive than the insurance obtained by the borrower.  There are no insurance rates or premiums set forth in the mortgage contract for the cost of force-placed insurance policies.

46.    Neither the mortgage contract nor any subsequent notice discloses, however, that the OneWest Defendants will receive unearned commissions and/or kickbacks from Balboa, for selecting the forced placed insurance policies from Balboa.  Nor is it disclosed to the borrower that unearned commission fees and/or kickbacks simply will be based upon a percentage of the cost of the premium of the force-placed insurance. Instead, the mortgage servicer misrepresents to borrowers that the cost of the force-placed insurance may be higher due to the "risk" the borrower poses or the actual costs incurred in securing the policies.  Upon information and belief, however, there are little to no actual costs incurred by the OneWest Defendants in securing the force placed policies, and little to no underwriting takes place.

47.    Routinely, the mortgage servicer disingenuously claims that it incurs fees or expenses in locating the force-placed insurance for the individual borrower.

48.    In fact, the so-called "expenses" the mortgage servicers incur are next to nothing.  Indeed, the OneWest Defendants have pre-existing

1  relationships with Balboa in securing a force-placed insurance policy, which
2  has been prearranged under a blanket or umbrella policy.

3      49.    Plaintiff and the other Class members do not have any choice
4  or input into what company is used to force-place the insurance policy, or
5  what expenses are incurred in "finding" an insurance company.  Nor do
6  they have the option to shop for the insurance service themselves.

7      50.    The force-placed insurance policies are not the same type of
8  policy that is authorized or required by the mortgage contract and is not
9  one that a borrower could find on the open market.

10     51.    Upon information and belief, the OneWest Defendants have
11 negotiated deals with Balboa whereby they receive a percentage of the
12 cost of the premiums of the force-placed insurance policy purchased for
13 the borrower.  This commission or kickback structure encourages the
14 Defendants to select the most expensive insurance policy, despite not
15 having an interest in the insured collateral.

16      52.    Upon information and belief, Balboa pays the commission or
17 kickback to OneWest and/or Financial Freedom and/or their subsidiaries
18 and related entities, in order to induce them to purchase excessively-
19 priced, force-placed insurance policies. Upon information and belief, Balbo
20 has paid OneWest and/or Financial Freedom a commission of up to
21 approximately 17% of the annual premium on the force placed insurance
22 policies.

23     53.    The OneWest Defendants charge Plaintiff and the other Class
24 members the full amount of the over- priced premium for the insurance
25 policy, despite being paid the kickback percentage of the policy.  The
26 insurance policies also often charge borrowers for unnecessary insurance
27 items.

28

54.    This scheme allows the OneWest Defendants – through kickbacks – and Balboa  – through excessively-priced premiums – to reap huge profits at the cost of the Plaintiff, the other Class Members, or ultimately, the mortgage investors.

55.    By securing these force-placed insurance policies through these exclusive relationships and not seeking competitive bids on the open market or attempting to continue or re-establish the prior insurance policy, the OneWest Defendants are not only obtaining the highest  non-competitive premium rate, but also engaging in self-dealing and profiteering.

56.    The kickbacks and commissions that the OneWest Defendants can earn on the force- placed  insurance policies are far greater than what it can earn on servicing a loan, which provides increased incentive to continue with this deceptive and unsavory practice.

57.    Upon  information  and  belief,  Balboa  has  entered  into agreements  with  the  OneWest  Defendants  whereby  Balboa  will  search  its servicing portfolios to detect uninsured properties (ie.,"loan tracking services") and will even perform other back-office administrative functions. Upon information and belief, these loan tracking services are provided by Balboa at no cost or below market cost to the OneWest Defendants.  The cost of the loan tracking services which are provided by Balboa for the entire OneWest/Financial Freedom loan portfolio are instead passed on to the smaller percentage of borrowers within the loan portfolio who end up paying for the force placed policies.

58.    Upon information and belief, the OneWest Defendants do not actually acquire an insurance policy for any individual homeowner -- in fact, the entire mortgage portfolio of OneWest is covered by a pre-purchased

1    group "master" policy.  OneWest and Financial Freedom thus play no role

2    in purchasing insurance for the homeowner.

3        59.    Upon information and belief, the agreement between the

4    OneWest Defendants and Balboa provides that all properties within the

5    OneWest/Financial Freedom loan portfolio that it monitors are covered by

6    an "umbrella" or "master" insurance policy whereby the property is

7    automatically covered whenever a homeowner's voluntary insurance policy

8    lapses.  Insurance is automatically placed on the property and the premium

9    is ultimately charged to the homeowner starting on the date of the lapse,

10   even if the lapse is discovered many months or years after the lapse in

11   coverage.  Homeowners are essentially paying for retroactive or backdated

12   coverage even if no claims were made or damage occurred from the date

13   of the lapse to the date the lapse is discovered.

14       60.    Upon information and belief, when a lapse in a homeowner's

15   insurance is discovered, an automatic process begins that is the same for

16   all homeowners (*i.e.*, Plaintiff and the Class members).  Upon information

17   and belief, at regular intervals form letters, form insurance policies and

18   "binders" purporting to come from OneWest and/or Financial Freedom are

19   sent to homeowners regarding the lapse in insurance and the force-

20   placement of insurance through Balboa.

21       61.    Because the OneWest Defendants have prearranged

22   agreements and umbrella or master insurance policies with Balboa for the

23   entire OneWest/Financial Freedom reverse mortgage loan portfolio, the

24   notion that any "commission" is due to OneWest or Financial Freedom for

25   the procurement of lender placed insurance is false.

26       62.    Defendants OneWest and Financial Freedom may also be

27   overcharging borrowers by disregarding the t h e Standard Mortgage Clause

28

or the Lender's Loss Payable Endorsement ("LLPE") in the standard form insurance agreement.  Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy.  Force-placed policies, however, take effect on the date of termination, and "double-cover" the property unnecessarily during the period covered by the LLPE or Standard Mortgage Clause.  This means the borrower is charged for coverage for which the lender or servicer has no exposure.

63.   The amounts charged to the borrower are also inflated by the interest that accrues on the amounts owed for force-placed coverage; when OneWest and Financial Freedom add the cost of the high-priced force placed premium to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to the lender.

64.   The actions and practices described above represent unfair, deceptive, and fraudulent practices that, even if the terms of the mortgage could be construed to allow, would still be an abusive and unlawful use of contractual powers.  The practice of Defendants in placing these unreasonably priced insurance policies on Plaintiff and other Class members without regard for competition on the open market or a commercially reasonable price, solely to maximize Defendants' own profits through the exorbitant cost of the policies, and by collecting kickbacks as a percentage of the premium charged to the borrower for those policies, is inherently unfair and deceptive and prohibited by law.

**Plaintiff Geraldine Doyle**

65.   Doyle obtained a Home Equity Conversion Loan Agreement ("Mortgage" or "HECM"), also commonly referred to as a reverse mortgage,

from Financial Freedom, a mortgage lender and servicer, which is secured by a Deed of Trust for a parcel of real property in Los Angeles County, California on February 2, 2006.  The United States Department of Housing and Urban Development ("HUD") insured the mortgage in case of lender default.  Doyle and her husband, Earl R. Doyle, were over the age of 62, as required to be eligible for the Fair Housing Authority's HECM.

66.     Doyle obtained the mortgage in order to make necessary repairs to her property, such as repairs to the roof and heating system.  Through her Mortgage, Doyle received a $54,824.00 line of credit to make the necessary repairs.  The principal limit of her loan was $207,878.67, which was the total amount that Doyle was able to borrow at the time of closing.

67.     Section 2.10.3 of Doyle's HECM provides that the Lender shall withhold premiums for fire, flood, and other hazard insurance required by the Security Instrument.

68.     Section 3 of Doyle's Deed provides that:

Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire.  This insurance shall be maintained in the amounts, to the extent and for the period required by Lender or the Secretary of . . . HUD.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable claims in favor of, and in a form acceptable to Lender.

69.     Section 5 of the Deed provides, in pertinent part:

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in

the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

70.    In other words, Doyle's reverse mortgage does not permit OneWest and Financial Freedom to profit from the placement of force placed insurance.

71.    Plaintiff Doyle challenges OneWest/Financial Freedom's manipulation of the force-placed insurance market with an eye toward artificially inflating premiums and placing unnecessary coverage, the price of which is then passed on in full to Plaintiff Doyle and other similarly situated home mortgage borrowers.  This action is brought to stop Defendants' exclusive, collusive, and uncompetitive force placed insurance arrangements, and to recover for Plaintiff and the other members of the Class the excess amounts charged to them beyond the true cost of insurance coverage.

72.    In or around 2007, IndyMac froze Doyle's escrow account.   As a result, Doyle could not make the necessary repairs on her home, as outlined and required by the Repair Rider to her Mortgage.

73.    Doyle's home had been insured through the California Fair Plan through the time of the closing on her Mortgage.  From May 4, 2005 through May 4, 2006, the annual premium for the homeowner's insurance that Doyle purchased on the market from the California Fair Plan was approximately $384.00.

74.    However, since Doyle was unable to make the necessary repairs to her roof and her property when IndyMac froze her escrow account, the California Fair Plan determined it could no longer insure her property and terminated its coverage of her home in or around 2007.  In other words, because IndyMac had failed to provide Doyle the funds owed

to her from her reverse mortgage, Doyle was unable to make the necessary repairs and maintain coverage through the California Fair Plan. Doyle promptly notified Financial Freedom as to why her insurance had lapsed.

75.  Nonetheless, on May 22, 2007, Financial Freedom Senior Funding notified Doyle that it would force-place insurance on Doyle's property at an annual premium of $2,754.00 for a coverage amount of $300,000 if she did not obtain coverage within 60 days.  The notice indicated that if she did not insure her home, any force-placed policy would be backdated with an effective date of May 4, 2007.   The premium for the force placed hazard insurance policy selected by Financial Freedom Senior Funding was more than seven times greater than the premium Doyle had paid for voluntary hazard insurance purchased from California Fair Plan.

76.  In or around May or June 2007, IndyMac also mistakenly allowed Doyle's fire (hazard) insurance to lapse.  Doyle immediately contacted IndyMac to inquire about the status of her fire (hazard) insurance.  California Fair Plan informed Doyle that they had forwarded two fire insurance statements to IndyMac for payment.  IndyMac subsequently informed California Fair Plan that it would make the necessary payments for the fire insurance.  However, Doyle received another notice dated June 19, 2007, informing Doyle that she still had not acquired fire insurance and that IndyMac would force-place such insurance on her home if she did not obtain coverage.  The notice also indicated that any force-placed insurance would have a backdated effective date of May 4, 2007.

77.  Doyle received a notice dated October 6, 2008, notifying her that Financial Freedom had force-placed hazard insurance on her home through Balboa, backdating Doyle's policy by more than two months, to

July 20, 2008.   The annual premium for the policy was $2,754.00.  This cost was added to Doyle's loan.

78.   In or around July 20, 2009, Financial Freedom renewed the Balboa force placed policy on Doyle's property and added the cost of the annual premium to Doyle's loan.

79.   Plaintiff Doyle received a notice from Balboa dated August 19, 2010, which indicated that the Balboa force placed policy had been renewed for another year and backdated to July 20, 2010.  The annual premium for the policy was $2,754.00,  This cost was added to Doyle's loan.

80.   Plaintiff Doyle received a notice from Financial Freedom dated August 18, 2011.  The notice indicated that Financial Freedom had force placed hazard insurance on her home through Balboa, backdating Doyle's policy by almost one month to July 20, 2011.  The annual premium for the policy was $2,074.00  This cost was added to Doyle's loan.

81.   In 2011, OneWest notified Doyle that it would foreclose on her home due to the force-placed insurance, the lack of repairs, and back taxes.  Doyle was able to avoid foreclosure through the help of an attorney.

82.   In or around July 2012, Plaintiff Doyle obtained a voluntary homeowner's hazard insurance policy for her home through California Fair Plan.  The cost of the annual premium for this policy was only approximately $341.00.  In contrast, the force placed hazard insurance policy that the OneWest Defendants had selected through Balboa for Plaintiff Doyle's property had an annual premium of 6 to 8 times greater, which price included, *inter alia*, the cost of the commission or kickback payments to OneWest and other unearned financial benefits.

# CLASS ACTION ALLEGATIONS

## A.   Class Definition

83.   Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a) and (b); (Code of Civil Procedure Section 382 and Civil Code Section 1781 on behalf of herself and all other similarly situated persons in California, with the Class being defined as follows:

> All individuals in California who were, at any time during the period within four years of the date this action was filed (the "Class Period"), charged for a force-placed insurance policy placed on their property by OneWest and/or Financial Freedom through Balboa, and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

84.   Plaintiff Doyle also brings this class action on behalf of a subclass of elderly California residents:

> All individuals aged sixty-five and over residing in California who were charged for a force-placed insurance policy placed on their property by the OneWest and/or Financial Freedom through Balboa, and/or these companies' affiliates, entities, or subsidiaries. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

85.   Defendants subjected Plaintiff and the Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is the Defendants' standard and undisputed business practice.

## B.   Numerosity (Code of Civil Procedure § 382; Civil Code § 1781(b)(1); Federal Rule of Civil Procedure 23(a)(1))

86. The individual Class members are so numerous that joinder of all members is impracticable. The Defendants sell and service a large amount of mortgage loans and insurance policies in the State of California and have, as a general business practice, failed to comply with California law. Moreover, the individual Class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendants. The precise number of Class members is at least more than one hundred but can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**C.    Commonality (Code of Civil Procedure § 382; Civil Code § 1781(b)(2); Federal Rule of Civil Procedure 23(a)(2) and (b)(3))**

87. There are questions of law and fact that are common to the claims of Plaintiff and Class. These common questions predominate over any questions that go particularly to any individual member of the Class. Among such common questions of law and fact are the following:

(a) Whether the premiums charged to Plaintiff and the Class were *bona fide* and reasonable;

(b) Whether the kickbacks and commissions received and/or paid by the Defendants constituted unfair and deceptive business practices;

(c) Whether Defendants purposely placed higher-priced insurance premiums on Plaintiff and the Class in order to maximize their own profits;

(d) Whether the OneWest and Financial Freedom breached the

1   mortgage contract;

2        (e)  Whether Defendants have unjustly enriched themselves at the

3   expense of the Plaintiff and the Class;

4        (f)  Whether the OneWest Defendants breached the implied

5   covenant of good faith and fair dealing by charging their residential

6   borrowers excessive amounts for force-placed insurance, a portion of

7   which was paid back to the mortgage servicer in the form of commissions

8   or kickbacks, and misrepresenting why the cost of force-placed insurance

9   was excessive; and

10       (g)  Whether the mortgage instrument contemplates or authorizes

11  the OneWest Defendants to derive hidden financial benefits by force-

12  placing the high cost insurance premiums on Plaintiff and the other

13  members of the Class.

14  **D.**    **Typicality (Civil Code § 1781(b)(3)); Federal Rule of Civil**

15         **Procedure 23(a)(3)**

16       88.  Plaintiff is a member of the Class as Defendants' own

17  records plainly reveal.  Plaintiff's claims are typical of the claims of the

18  Class because of the similarity, uniformity, and common purpose of the

19  unlawful conduct of Defendants. Each Class member has sustained, and

20  will continue to sustain, damages in the same manner as Plaintiff as a

21  result of Defendants' wrongful conduct.

22  **E.**    **Adequacy of Representation (Civil Code § 1781(b)(4));**

23         **Federal Rule of Civil Procedure 23(a)(4)**

24       89.  Plaintiff is an adequate representative of the Class and will

25  fairly and adequately protect the interests of the Class.  Plaintiff is

26  committed to the vigorous prosecution of this action and have retained

27  competent counsel, experienced in litigation of this nature.  There is no

28

1  hostility between Plaintiff and the unnamed Class members.  Plaintiff

2  anticipates no difficulty in the management of this litigation as a class

3  action.

4      90.    To prosecute this case, Plaintiff has chosen counsel

5  experienced in class action litigation with the financial and legal resources

6  to meet the substantial costs and legal issues associated with this type of

7  litigation.

8  **F.    Superiority (Code of Civil Procedure § 382);**

9      **Federal Rule of Civil Procedure 23(b)(3)**

10     91.    A class action is superior to individual actions in part because

11  of the non-exhaustive factors listed below:

12      (a) Joinder of all Class members would create extreme hardship

13  and inconvenience for the affected customers as they reside all across

14  the states;

15      (b) Individual claims by Class members are impractical because

16  the costs to pursue individual claims exceed the value of what any one

17  Class member has at stake.  As a result, individual Class members have

18  no interest in prosecuting and controlling separate actions;

19      (c) There are no known individual Class members who are

20  interested in individually controlling the prosecution of separate actions;

21      (d) The interests of justice will be well served by resolving the

22  common disputes of potential Class members in one forum;

23      (e) Individual suits would not be cost effective or economically

24  maintainable as individual actions; and

25      (f) The action is manageable as a class action.

26     92.    In the alternative, this action is certifiable under the provisions

27  of Fed. R. Civ. P. 23(b)(1) & (2), which have been found applicable to the

28

State of California, because:

a.  Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

b.  Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

c.  Defendants have acted, or failed to act, in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

d.  Plaintiff does not anticipate any difficulty in the management of this litigation.

## **FIRST CAUSE OF ACTION**
### **BREACH OF CONTRACT**
### **(As against the OneWest and Financial Freedom)**

93.    Plaintiff re-alleges and incorporates the paragraphs above as if fully set forth herein and further allege as follows.

94.    Plaintiff and the class members' mortgages are written on uniform mortgage forms and contain substantially similar provisions regarding force-placed insurance requirements and its placement by Defendants OneWest and Financial Freedom.  Plaintiff's mortgage agreement is attached hereto as Exhibit A.

95.   Plaintiff's mortgage requires that she maintain insurance on her property and provides that if she fails to do so, then the lender may obtain insurance coverage to protect its interest in the property, "force place" the coverage, and charge the borrower the cost.

96.   OneWest and Financial Freedom charge Plaintiff and other similarly situated borrowers premiums that include unearned "commissions" or kickbacks, reinsurance premiums, as well as bundled administrative and other impermissible costs.  These costs are not costs of coverage, and are not applied to protecting the OneWest Defendants' rights or risk in the collateral for borrowers' mortgage loans.  OneWest and Financial Freedom breached the mortgage agreements by, among other things, charging Plaintiff and other Class members the amounts beyond the actual cost of insurance coverage.

97.   OneWest and Financial Freedom also breached Plaintiff's and the Class members' mortgage agreements by charging Plaintiff and the Class for excess and unnecessary force- placed insurance coverage, including retroactive coverage, as such coverage does not protect the OneWest Defendants' rights in the collateral or cover its risk.

98.   Plaintiff and the Class members have suffered damages as a result of OneWest's and Financial Freedom's breach of contract. Plaintiff, on behalf of herself and all similarly situated Class members, seeks compensatory damages resulting from the OneWest Defendants' breach of contract, as well as injunctive relief preventing them from further violating the terms of the mortgages.

///

///

///

## SECOND CAUSE OF ACTION

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Against Defendants OneWest and Financial Freedom)**

99.    Plaintiff re-alleges and incorporates the paragraphs above as if fully set forth herein and further allege as follows.

100.   A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

101.  Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

102.   Plaintiff's and the Class members' mortgage contracts allow OneWest and/or Financial Freedom to force place insurance coverage on the borrower in the event of a lapse in coverage, but do not define standards for selecting an insurer or procuring an insurance policy.

103.  OneWest and its loan servicer subsidiary, Financial Freedom, are afforded discretion in force-placing insurance coverage. OneWest/Financial Freedom is permitted unilaterally to choose the company from which it purchases the force-placed insurance and negotiate any price for the coverage that OneWest/Financial Freedom procures.  OneWest/Financial Freedom has an obligation to exercise the discretion afforded them in good faith, and not capriciously or in bad faith. Plaintiff does not seek to vary the express terms of the mortgage contract, but only to insure that OneWest/Financial Freedom exercise this discretion in good faith.

104.   OneWest/Financial Freedom breached the implied covenant of good faith and fair dealing by, among other things:

(a)   Manipulating the force-placed insurance market by selecting insurers, such as Balboa, that will artificially inflate premiums to include kickbacks to OneWest/Financial Freedom and /or its affiliates and issue excess insurance coverage not necessary to cover the risk of OneWest/Financial Freedom, and by failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby insurance coverage is routinely purchased from the same provider(s) and its affiliates without seeking a competitive price;

(b)   Exercising its discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting force-placed insurance policies with artificially inflated premiums to maximize the profits of OneWest/Financial Freedom;

(c)   Assessing inflated and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

(d)   Allowing OneWest/Financial Freedom and/or its affiliates to collect a percentage of the premiums charged to Plaintiff and the Class as a kickback and passing the cost of the kickback on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e)   Charging Plaintiff and the Class for commissions when the insurance is prearranged and no commission is due;

(f)   Charging Plaintiff and the Class the cost of having the vendor perform its obligation of administering its mortgage portfolio, which is not properly chargeable to Plaintiff or the Class;

(g)   Force placing insurance coverage in excess of what is required by law or borrowers' mortgage agreements;

(h)   Force placing insurance coverage in excess of that required to cover the lender's interest in the property, or the balance owed on the loan; and

(i)   Charging Plaintiff and the Class an inflated premium due to the captive reinsurance arrangement.

105.  As a direct and proximate result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages.  Plaintiff, on behalf of herself and similarly situated Class members, seeks a judicial declaration determining that the terms of and the premiums charged for the force-placed insurance violate the mortgage contract and the implied duties of good faith and fair dealing. Plaintiff seeks compensatory damages resulting from OneWest's/Financial Freedom's breach.  Plaintiff further seek all relief deemed appropriate by this Court, including attorney fees and costs.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### (As against Defendant Balboa)

106.  Plaintiff re-alleges and incorporates the paragraphs above as if full set forth herein and further allege as follows.

107.  Balboa  has received, and continues to receive, a benefit at the expense of the Plaintiff and the Class, and have knowledge thereof

108.  Balboa has unlawfully and unfairly attempted to collect, and collected, excessive amounts for force-placed insurance policies pursuant to lucrative prearranged agreements with the OneWest Defendants. Pursuant to these agreements, Balboa has agreed to provide kickbacks to OneWest/Financial Freedom as a percentage of the outsized and excessive premiums which are charged to the borrowers, but realized as profit by Balboa.   As part of these pre-arranged agreements,  Balboa also has obtained lucrative servicing functions, including, but not limited to, monitoring the OneWest /Financial Freedom servicing portfolios to detect uninsured properties, alerting  OneWest/Financial Freedom  when there is

1  a lapse in insurance, and providing other back-office administrative

2  functions for the OneWest Defendants.

3      109.   Accordingly, Balboa has received benefits that they have

4  unjustly retained at the expense of Plaintiff and the other members of the

5  Class. The circumstances are such that it would be inequitable for Balboa

6  to retain the benefit without paying the value thereof to Plaintiff and the

7  other members of the Class

8      110.   Plaintiff,  on behalf of herself  and all similarly situated

9  individuals,  demands judgment against Balboa for compensatory damages,

10  pre and post judgment interest, attorney's fees, declaratory and injunctive

11  relief, costs incurred in bringing this action, and any other relief the Court

12  deem just and proper.

13

14                    **FOURTH CAUSE OF ACTION**

15                    **BREACH OF FIDUCIARY DUTY**

16         **(Against Defendants OneWest and Financial Freedom).**

17      111.   Plaintiff re-alleges and incorporates the paragraphs above as if

18  fully set forth herein and further allege as follows.

19      112.   The OneWest Defendants hold funds in escrow on behalf of

20  borrowers whose mortgages they service. These funds are designated, in

21  part, for the purpose of paying insurance premiums when due, and any

22  excess funds are to be returned to the Plaintiff and the other members of

23  the Class under the terms of the mortgage agreements.

24      113.   Fiduciary relationships exist between the Plaintiff and the

25  OneWest Defendants.   The OneWest Defendants have received a greater

26  economic benefit than that taken from a typical escrow transaction.

27  Specifically, the debtor-creditor relationship transformed into a fiduciary

28

relationship when the OneWest Defendants  took it upon themselves to manage borrowers' escrow accounts and withdrew money from escrow to pay force-placed insurance premiums. The OneWest Defendants violated their fiduciary duties to Plaintiff and the other Class members when they began receiving unlawful kickbacks or other compensation under the kickback scheme, which is clearly a greater economic benefit than what was contemplated under the mortgage.

114.  The OneWest Defendants  breached their fiduciary duties to Plaintiff and the other Class members by (1) not acting in the best interest of Plaintiff and the Class members when OneWest/Financial Freedom profited, at the expense of Plaintiff and the Class members, from force-placed insurance policies that were purchased using escrow funds held by OneWest/Financial Freedom for the benefit of Plaintiff and Class members, and (2) not disclosing the kickback scheme to Plaintiff and the Class members.  These actions were undertaken by/ OneWest/Financial Freedom in bad faith for their own benefit and were not intended to benefit the Plaintiff or the other Class members.

115.  As a direct result of the OneWest Defendants' actions, and the subversion of the interests of the Plaintiff and the Class to these Defendants' own interests, in reaping extravagant and outrageous fees, Plaintiff and all others similarly situated have suffered injury in the form of unnecessary and excessive escrow charges and a loss of funds from their escrow accounts.

## FIFTH CAUSE OF ACTION

### FINANCIAL ELDER ABUSE

### (California Subclass as against Defendants OneWest and Financial Freedom)

116.  Plaintiff re-alleges and incorporates the paragraphs above as if fully set forth herein, and Plaintiff further alleges as follows on behalf of herself and a Subclass of senior citizens in California.

117.  The OneWest Defendants' conduct constitutes financial abuse under Cal. Welf. & Inst. Code § 15657.5 *et seq.*, as defined in Cal. Welf. & Inst. Code § 15610.30, which states, in pertinent part, as follows:

(a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

(2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

118.  At all relevant times, the OneWest Defendants took and/or assisted in the taking of property from Plaintiff Doyle and the Subclass for Defendants' own wrongful use.

119.  The OneWest Defendants wrongfully charged Plaintiff Doyle and the Subclass excessive, unlawful and unfair fees and costs when force-placing insurance with exorbitant premiums, including the cost of kickbacks, on Plaintiff Doyle and the Subclass's property.  These excessive charges have made Plaintiff Doyle and the Subclass more vulnerable to foreclosure or have, in fact, pushed members of the Subclass into foreclosure.

120.  In performing these wrongful acts, the agents and employees of the OneWest Defendants acted on behalf of the OneWest Defendants. ///

121.   The conduct of the OneWest Defendants was knowing, reckless, oppressive, fraudulent  and malicious within the meaning of Welf. & Inst. Code § 15657.5 *et seq.*

122.   Under Welf. & Inst. Code § 15657.5 *et seq.*, the OneWest Defendants are liable for  Plaintiff' Doyle and the Subclass's reasonable attorneys' fees and costs incurred in investigating and litigating this claim.

123.   Under Civil Code § 3294 and Welf. & Inst. Code § 15657.5, the OneWest Defendants are liable for punitive damages.

124.   Under Civil Code § 3345, the OneWest Defendants are liable for treble damages and penalties because: (a) the Defendants knew their conduct was directed at senior citizens; (b) Defendants' conduct caused a senior citizen to suffer substantial loss of property and assets set aside for her retirement and essential to her health and welfare; (c) Plaintiff Doyle is a senior citizen who is more vulnerable than other members of the public to Defendants' conduct because of her age, impaired understanding, impaired health or restricted mobility; and (d) Plaintiff Doyle and the Subclass members actually suffered substantial economic damages as a result Defendants' conduct.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE, § 17200, *et seq.*

### (As against all Defendants)

125.   Plaintiff re-allege and incorporates the paragraphs above as if fully set forth herein and further alleges as follows.

126.   During the relevant period, Defendants have regularly conducted business throughout the State of California.  Defendants'

1  scheme was devised, implemented and directed from California.

2  Accordingly, California's unfair competition law applies to a class of

3  borrowers within California who have been harmed as a result.  Moreover,

4  California has a substantial interest in preventing fraudulent practices within

5  the State which may have an effect both in California and throughout the

6  rest of the country.

7      127.  California's Unfair Competition Law, Cal. Bus. & Prof. Code §

8  17200 *et seq.* ("UCL") prohibits any "unlawful" business act or practice.

9  Defendants have violated section 17200's prohibition against engaging in

10  unlawful acts or practices by violating the common law  including breach of

11  contract, and the implied covenant of good faith and fair dealing, unjust

12  enrichment, and breach of fiduciary duty.

13      128.  California's Unfair Competition Law, Cal. Bus. & Prof. Code §

14  17200 *et seq.*  ("UCL") prohibits any "unlawful" business act or practice.

15  Defendants have violated section 17200's prohibition against engaging in

16  unlawful acts or practices by violating California's Financial Elder Abuse

17  laws codified at Cal. Welf. & Inst. Code § 15657.5 *et seq*.

18      129.  The UCL also prohibits any "unfair" business act or practice.

19  As detailed in the preceding paragraphs, Defendants engaged in unfair

20  business acts or practices by, among other things, demanding and force-

21  placing insurance not required by law, or in amounts greater than required

22  by law or necessary to secure the sums borrowed, receiving and/or paying

23  kickbacks for force-placed insurance, to the detriment of Plaintiff and other

24  members of the proposed Class and Subclass.

25      130.   These business practices are also unfair because, *inter alia*,

26  they are contrary to the principle that (i) "lenders should avoid creating

27  situations where a building is over-insured," 74 Fed. Reg. 35914, 35918

28

(July 21, 2009); (ii) consumers should receive "meaningful disclosure of credit terms," 15 U.S.C. § 1601(a); and other clearly articulated principles of law.

131.   Defendants systematically engaged in these unfair and/or unlawful business practices to the detriment of Plaintiff and other members of the Class.

132.   The harm caused by these business practices vastly outweighs any legitimate business utility they possibly could have.

133.   Plaintiff and other members of the Class have been injured and have suffered a monetary loss as a result of Defendants' violations of the UCL.

134.   As a result of Defendants' violations of the UCL, Plaintiff  and other members of the  Class are also entitled to recover attorneys' fees and costs to be paid by Defendants, as provided by California Code of Civil Procedure § 1021.5 and other applicable law.

## SEVENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (As against Balboa)

135.   Plaintiff re-alleges and incorporates the paragraphs above as if fully set forth herein and further alleges as follows.

136.   Plaintiff and the Class members have a business relationship with the OneWest Defendants pursuant to the mortgage contracts.  Plaintiff and the Class have legal rights under these mortgage contracts.  For example, the Plaintiff and the Class have a right not to be charged exorbitant premiums, including the cost of kickbacks to the OneWest Defendants, in bad faith for the forced-place insurance policies.  Balboa

has knowledge of Plaintiff's and the class's business relationship with the OneWest Defendants pursuant to the mortgage contracts.   Balboa is not a party to the mortgage contracts, nor is Balboa a third-party beneficiary. Further, Balboa does not have any beneficial, economic or supervisory interest in the mortgage contracts.

137.   Defendants Balboa intentionally and unjustifiably interfered with the Plaintiff's and the Class's rights under the mortgage contracts, as described above by, *inter alia*, paying kickbacks to the OneWest Defendants and by charging for administering the OneWest loan portfolio, which are purposefully and knowingly charged to Plaintiff and the other members of the Class.

138.   Plaintiff and the Class have been damaged as a result of Balboa's Security's interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the mortgages. Plaintiff and the Class members seek a judgment in their favor against Balboa for the actual damages suffered by them as a result of Balboa's tortuous  interference. Plaintiff also seeks all costs of litigating this action, including attorney's fees.

## **EIGHTH CAUSE OF ACTION**

### **EQUITABLE RELIEF**

**(As against all Defendants)**

139.   Plaintiff re-alleges and incorporates the paragraphs above as if fully set herein and further alleges as follows.

140.   Plaintiff has no adequate remedy at law to address the wrongful conduct engaged in by Defendants.  Thus, Plaintiff asks the Court to enjoin the Defendants from the practice of collecting fees and/or kickbacks for the

1  force-placement of insurance on the grounds that the fees and/or kickbacks

2  are neither disclosed nor permitted by Class members' mortgage contracts.

3  Plaintiff further asks the Court to enjoin the Defendants from force-placing

4  insurance in excess of their mortgage balance on the grounds that this is

5  disallowed by their mortgage.

6      141.  Plaintiff asks the Court to award restitution to return all charges

7  Defendants or their affiliates received in connection with the purchase of

8  force-placed insurance.

9  Plaintiff asks the Court to order Defendant to remove from Class members'

10  escrow accounts all charges that are attributable to fees and/or kickbacks

11  paid to Defendants or their affiliates for the purchase of force-placed

12  insurance.

13

14                      **PRAYER FOR RELIEF**

15      **WHEREFORE**, Plaintiff, on behalf of herself and all others similarly

16  situated, demands judgment against Defendants as follows:

17      (1)    An order certifying the Class as requested herein and declaring

18  Plaintiff and their counsel to be representatives of the Class;

19      (2)    Awarding damages sustained by Plaintiff and the Class as a

20  result of the OneWest Defendants' breach of contract and the implied

21  covenant of good faith and fair dealing, together with pre-judgment interest;

22      (3)    Finding that Defendants have been unjustly enriched and

23  requiring Defendants to  refund all unjust benefits to Plaintiff and the Class,

24  together with pre- judgment interest;

25      (4)    Awarding Plaintiff and the Class costs and disbursements

26  and reasonable allowances  for  the  fees  of  Plaintiff's  and  the  Class's

27  counsel  and  experts, and reimbursement of expenses;

28

1      (5)    Awarding restitution to Plaintiff and the Class members;

2      (6)    Awarding equitable relief, including enjoining Defendants from

3 continuing the unlawful practices set forth herein;

4      (7)    Exemplary damages;

5      (8)    Such other and further relief the Court deems just and

6 equitable.

7

8 ### DEMAND FOR JURY TRIAL

9      Plaintiff and the Class request a jury trial for any and all the claims

10 for which a trial by jury is permitted by law.

11

12 Dated: October 3, 2014          DEBLASE BROWN EYERLY LLP

13

14 By _____
Michael Eyerly, Esq.

15 eyerly@dbelegal.com
680 South Santa Fe Avenue

16 Los Angeles, CA 90021
Tel.:  310.575.9955

17 Fax:  310.575.9919

18 Catherine E. Anderson, Esq.
Oren Giskan, Esq.

19 GISKAN SOLOTAROFF ANDERSON &
STEWART, LLP

20 11 Broadway, Suite 2150
New York, NY 10004

21 Tel:  212. 847.8315
Fax:  646.520.3236

22 Attorneys for Plaintiff Doyle and the

23 Class

24

25

26

27

28

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

*GERALDINE DOYLE,et al.* **CV13-5951 SJO(JEM)**

I am employed in the County of Los Angeles, State of California, I am over the age of 18 years and not a party to the within action. My business address is 680 South Santa Fe Avenue, Los Angeles, CA 90021.

On October 3, 2014, I caused to be served the foregoing:

**THIRD AMENDED CLASS ACTION COMPLAINT FOR**

1. **Breach of Contract**
2. **Unjust Enrichment**
3. **Breach of Fiduciary Duty**
4. **Financial Elder Abuse**
5. **Violations of Bus. & Prof. Code Section 17200**
6. **Tortious Interference with Business Relationship**
7. **Equitable Relief**

**DEMAND FOR JURY TRIAL**

By electronically serving the documents described above via the United States District Court Electronic Case Filing website (CM/ECF notification system) to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed in Los Angeles, California.

DATE: October 3, 2014

_____

Carrie Ardoin